KANE and others, *appellants*, and WHITTICK, *respondent.*

Where, in a suit in chancery on a bill filed charging a *deed* conveying lands, *absolute in its terms*, to be a *mortgage*, a decretal order is made adjudging the deed to be a mortgage, and making a reference to a master to take and state an account, such order is *not final* within the meaning of the statute limiting appeals; and to give a party the benefit of an appeal from such order, he must prosecute the same within *fifteen days* after the making of the order.

If, in such case, on the coming in of the master's report, the defendant suffers a decree confirming the report and awarding execution for the amount certified to be due, to pass against him by *default*, and then files an appeal, as well from the order adjudging the deed to be a mortgage, as from the decree confirming the master's report and awarding execution, *the appeal will be dismissed*, it being inoperative as to the first order, because not made within *fifteen days*, and as to the second, because permitted to be entered by *default*.

*It seems*, that even had the master's report been excepted to, and its confirmation opposed on the final hearing, that the appeal from the final decree would not have opened for consideration the *previous order* adjudging the deed to be a mortgage, no such connection existing between the last decree and the previous order as necessarily to involve the consideration of the previous order.

*It seems also*, that a party who had submitted to and acted under an order of reference declaring the principles upon which it should be conducted, would on that ground be estopped, on an appeal from a final decree, from calling in question the correctness of such previous order.

APPEAL from chancery. Whittick, in 1821, filed a bill in chancery, charging that a *deed* executed by his grand-father, John Whittick, to Cornelius Van Schelluyne, bearing date in January, 1772, conveying three lots of land *absolutely*, was *intended* as a *mortgage* to secure the payment of the sum of £79. 4. 7. and that Schelluyne, at various times down to the time of his death in 1813, acknowledged that it was so intended; that

ALBANY, Dec. 1831. Kane v. Whittick.

two of the lots in the settlement of the boundary line between this state and Vermont, fell within the limits of the latter state; that John Whittick remained in the possession of the third lot, containing about 90 acres, until his death in 1791; that he left two sons named Abraham and Henry; that Abraham died in 1792, leaving two children, the complainant and a daughter named Caty; that on his death, his widow and children, and Henry Whittick, who was an idiot, remained in possession of the lot until 1796, when the widow married one Henry Lampman, who continued in possession until 1798, when his wife died, and he quit the premises, and was succeeded in the possession by one Peter J. Lampman, who remained possessed of the lot until 1816, when Kane, one of the appellants, sold the lot for the price of $2500 to L. Sherwood and D. Rogers, who entered into possession of the same. Henry Whittick, the idiot son of John Whittick, remained with, and under the care of Peter J. Lampman during all the time that the latter remained on the farm. Cornelius Van Schelluyne gave his property by will to his son Dirck and to his daughter Deborah, the wife of Elias Kane. The bill prayed a discovery and account. The defendants, Dirck Van Schelluyne and Elias Kane and wife, answered, *denying* all knowledge, information and belief as to the deed executed in 1772 having been *intended* as a mortgage, insisting that it was an *absolute conveyance;* they stated that they had found among the papers of their testator a *bond* executed to him by John Whittick and Abraham Whittick, bearing date the 24th January, 1787, conditioned for the payment of £225.12; that they did not know the cause or consideration of such bond, but suggested that it might have been for the loss of the lots which fell into Vermont. They insisted that if the deed should be considered as a mortgage, the complainant was barred of the right to redeem by lapse of time, and claimed the benefit of the *statute of limitations;* they also claim the benefit of the *statute of frauds* the same as if pleaded in bar. The other defendants, the purchasers from Kane, denied all notice of the claim of the complainant. From the testimony in the case it appeared that Caty, the sister of the complainant, was married and died leaving one child, who was supposed to be still liv-

ing; that after Henry Lampman left the possession of the premises, one Gaffin, and afterwards Peter J. Lampman, occupied the lot as tenants of Schelluyne, upon the terms that they should pay him, besides maintaining Henry Whittick $40 per annum; and generally, the principal allegations in the bill were proved.

The cause was brought to a hearing on the pleadings and proofs, and written arguments were submitted by the counsel for their respective parties. The CHANCELLOR held, that *parol evidence* is admissible to shew that a *deed*, absolute in terms, was *intended* by the parties as a *mortgage* or security for the payment of money, and from the testimony, was satisfied that the deed from Whittick to Schelluyne was intended as a mortgage. He also held the acknowledgement of Schelluyne within ten years previous to the filing of the bill a sufficient answer to the objection to relief arising from *lapse of time;* and he, therefore, on the 7th October, 1828, *decreed* the *deed* set forth in the bill to be a *mortgage*, and made an order of reference to a master to take and state an account directing the *complainant* to be charged with the amount mentioned in the bond of the 24th January, 1787, and the *defendants* to be charged with all payments made to Schelluyne on account of the lot, with interest thereon; also with all sums received by him from the state or otherwise, on account of the lots which fell within the limits of the state of Vermont, with interest thereon; also with the rents and profits of the lot from the time Schelluyne took possession thereof by his tenant until the sale thereof to Sherwood and Rogers, excepting so much as was applied to the support of *Henry Whittick*, with interest on the same; and also with the amount of the purchase money received from Sherwood and Rogers, with interest thereon; reserving all other questions until the coming in of the report of the master. *See* case and *opinion* of the CHANCELLOR, 1 Paige's Chancery Reports, 202 to 209. The parties appeared before the master, who made a report stating an account according to the directions contained in the order of reference, and certifying a balance of $4235,24 as *due from the defendants.* No exceptions were taken to the report; the cause was noticed for hearing on the report, and on the 28th August, 1829, it was

confirmed, and a *decree* made that the complainant have execution for the sum reported as due, with costs. This decree was made on filing a notice of hearing with an admission of service thereof, *no one appearing for the defendants*. On the 6th October, 1830, the defendants filed their appeal, as well from the last decretal order, as from the order made in October, 1828.

On the cause coming on for argument in this court, it was objected *preliminarily* by the counsel for the respondent that the *appeal should be dismissed*, on the grounds that the decretal order of October, 1828, was an *interlocutory* order, and no appeal having been taken therefrom within *fifteen days*, the appellants were not entitled to be heard in respect to it; and that the decree of August, 1829, having been obtained by *default*, the appellants could not prosecute an appeal therefrom.

*S. Stevens*, for the respondent. Appeals from the court of chancery, except from *final decrees*, must be made within *fifteen days* after the making of the decree or order appealed from. 1 R. L. 134, § 9. The order of October, 1828, was not a *final decree*, and not having been appealed from until October, 1830, the appeal as to that order must be dismissed. The order of October 1828 was *interlocutory;* it was virtually a decree to account, and such decree is interlocutory. 2 Atk. 385. The rights of the parties were not definitively settled by it; where facts remain to be ascertained, a decree cannot be considered final. 12 Johns. R. 508. 17 id. 748. A final decree is the definitive sentence of the court upon the final hearing, after all the facts are ascertained. Hynde's Ch. 429. 2 Madd. Ch. 343. Newland, 159. 1 Moulton's Pr. 309. That this was not a final decree, is evident, from the fact that no costs could have been taxed upon it. 2 R. S. 181, § 91. Besides, the appellants having acted under the order of October, 1828, are precluded from appealing from it. 1 Cowen, 709. 5 Wendell, 636. As to the *final decree* of August, 1829, it having been rendered by *default*, no appeal lies from it. 1 Dickens, 282. 12 Johns. R. 493. 13 id. 575. 17 id. 469. 2 Cowen, 49. 2 Wendell, 244. 4 id. 179.

*B. F. Butler* and *H. Bleecker*, for appellants. The reason of the rule that this court will not entertain an appeal from a decree or judgment rendered on *default* is, that a party seeking a review, having slept on his rights in the court below, is not entitled to be heard here. This reason does not apply to the present case. The appellants do not ask to call in questions a decree permitted to pass against them by default, but a decree made against them notwithstanding the utmost opposition. The rights of the parties were substantially settled by the decree of October, 1828; it declared the principles upon which it proceeded; which principles the appellants now wish to submit to the consideration of this court. That decree was obtained not by default, but after argument, and full hearing of the parties; and the reasons of the chancellor for the decree made by him are set forth *in extenso*. It is not a decree of such a character as must be appealed from in *fifteen days*, upon pain of forfeiting the right. The decrees or orders coming within that limitation, are such as are strictly *interlocutory*, settling some point, or directing some proceeding preparatory to the making of the decree which determines the rights of the parties, which, and which alone, is the *final decree*, within the meaning of the statute regulating the prosecution of appeals. It is the decree *on the merits*, and the party dissatisfied with it is not limited to *fifteen days*, but may bring his appeal at any time within *five years*,

On the suggestion of Mr. Justice SUTHERLAND, the question was reserved, and the counsel for the appellants were directed to proceed to the argument of the case on the merits. As, however, the appeal was eventually dismissed on the preliminary objections taken by the counsel for the respondent, it is deemed unnecessary to do more than to give a note of the cases referred to by counsel, on the question of the inadmissibility of *parol evidence*, to shew that a deed of conveyance of lands absolute in its terms, is, in fact, a *mortgage*, and was so intended by the parties.

*Authorities against the admission of parol evidence.* Phil. Ev. 480. 5 Reports, 26. 1 Bro. Ch. R. 92. 2 id. 219. 1 Vesey,

jun. 241. 1 Vernon, 418. Cas. temp. Talb. 61. 7 John. Ch. R. 126. 2 id. 557. 6 Johns. R. 21. 14 id. 391. 6 Vesey, 339. 2 Coxe, 290. 1 Johns. Ch. R. 339. 4 id. 167, 1 id. 594. 5 id. 417. 2 id. 182. 1 Hopkins, 124. 2 Sch. & Lef. 307, 323. 4 Cranch, 235, 6 Cowen, 756. 4 Wendell, 483. 1 Peter's S. C. R. 16, 17. 5 Littell's Kentucky R. 74.

*Authorities for the admission of parol evidence.* Cas. temp. Talbot, 61. Prec. in Ch. 526. 2 Atk. 258. 3 id. 388. 1 Day's R. 139. 4 Johns. Ch. R. 167. 1 id. 598. 1 id. 582. 2 id. 601. 2 P. Wms. 548. 10 Vesey, 519.

The following opinions were delivered:

By Mr. Justice SUTHERLAND. The respondent contends preliminarily that this appeal cannot be sustained, for the following reasons: 1. That so far as it relates to the decretal order of October, 1828, it was not made in due season, that being an interlocutory decree or order, for which no appeal can be made after the expiration of fifteen days from the time it was entered; and 2. That the final decree of August, 1829, having been obtained by the default of the appellants, cannot be appealed from by them.

A decree is said by Mr. Harrison, 1 Harrison, Ch. 420, to be *interlocutory* when it happens that some material circumstance or fact necessary to be made known to the court is either not stated in the pleadings, or is so imperfectly ascertained by them that the court is unable to determine *finally* between the parties, and therefore a reference to, or an inquiry before a master, or a trial of the facts before a jury, becomes necessary to remove the doubts occasioned by that defect. The court in the mean time suspends its *final* judgment until, *by the master's report*, or the verdict of the jury, it is enabled to decide *finally*. A decree is *final* when all the circumstances and facts material and necessary to a complete explanation of the matters in litigation are brought before the court, and so fully, and clearly ascertained on both sides, that the court is enabled, upon a full consideration of the case made out and relied upon by each party, *finally* to determine between them, according

to equity and good conscience. A decree does not become final, therefore, because it settles one or more of the material questions involved in the case, if any other material fact or question remains undisposed of. This is implied in the term itself, and is acknowledged in all the cases. Thus in *Travis* v. *Waters*, 12 Johns. R. 500, the bill was filed for a specific performance of an agreement for the sale of land, and for an account of payments, &c. On the 27th of October, 1808, the court of chancery decreed a conveyance in fee of part of the premises, to be executed by the respondent, and referred it to a master to take an account of the quantity of land to be conveyed, and of the payments, and to ascertain the balance, if any, due to the respondent, on the payment of which the respondent was to execute the conveyance; and the question of costs was reserved until the coming in of the report. This was held by this court to be but an interlocutory decree, although it settled the main point in controversy between the parties, to wit, that the complainant was entitled to a specific performance, upon the payment of the balance due; but it left other material questions unsettled, to wit, the quantity of land to be conveyed, and the balance due; and the reference to the master was for the purpose of investigating and setlling those points. Upon this state of facts, Judge Platt, who delivered the opinion of this court, observed that it was clear that by the pleadings and the facts found by the special verdict on the feigned issue, it did not fully appear how much had been paid by Travis on account of the land, nor did it appear how much of the land contracted for, Waters remained capable of conveying. These essential facts remained to be ascertained by the master's report, before a final decree could be pronounced. The subsequent decree, made upon the coming in of the manter's report, was *such final decree.*

The analogy between the case of *Travis* v. *Waters* and the case at bar, so far as the question which we are now considering is concerned, is very striking. The decree of October 1828, in this case, decided the main point in controversy between the parties, to wit, that the conveyance from Whittick to Schelluyne of January, 1772, was a mortgage, and not an absolute deed; but it left the amount for which it was given,

ALBANY. Dec. 1831. Kane v. Whittick.

or held as security, unascertained, and directed a reference to a master to investigate that subject and state the account—a *final decree* could be made until the coming in of that report. In *Jacques* v. *The Methodist Episcopal Church*, 17 Johns. R. 558, the rule laid down in *Travis* v. *Waters* was reiterated in this court. Judge Spencer says the *final* decree in this cause was pronounced the 15th of June, 1818. After the decree of June 27th, 1815, facts were to be ascertained, and the master made a further report in January, 1818, and this was necessary before a *final decree* could be made. In *Travis* v. *Waters*, he continues, this court considered a decree as final when all the material facts in a cause had been ascertained. I apprehend no case can be found in which a decree directing a reference to a master, or a feigned issue, for the purpose of ascertaining any material fact in the case, has been held to be a final decree.

*Although the decree of October, 1828, established* the liability of the defendants to account on the footing of mortgagees in possession, it left the amount for which they would finally be held responsible unascertained. It was perhaps impossible at that time judicially to say in whose favor the final decree would be; it depended upon the amount of the rents and the profits of the lot, over and above the support of Henry Whittick, the idiot, and the amount of payments made by the Whitticks to old Mr. Schelluyne. There certainly were very material facts to be determined before the making of the final decree in the cause, and the reference to the master was for the purpose of ascertaining those facts. The decretal order of October, 1828, therefore not being the final decree in the cause, and not having been appealed from within 15 days, cannot now be reviewed, unless it opened by the appeal from the final decree made in August, 1829.

To the appeal so far as it relates to the decree of August, 1829, it is objected that it will not lie, because that decree was entered by default, the defendants below, the present appellants, not having excepted to the master's report, nor appeared to oppose its confirmation. It has been repeatedly decided in this court, that no appeal or writ of error would lie from a decree of judgment of the court of chancery or the su-

preme court, rendered by default. The case of *Sands* v. *Hildreth*, 12 Johns. R. 493, is the leading case upon this subject. In that case, the cause has been regularly put at issue, and witnesses examined on the part of the respondent; but no witness was produced or examined on the part of the appellant. The cause was regularly set down for hearing, when the defendants all made default, no one appearing on behalf of either of them, and a decree was pronounced, of course, by the chancellor, in favor of the respondent—the appeal was dismissed by this court unanimously, with costs. In *Gelston* v. *Hoyt*, 13 Johns. R. 361, the same principle was applied to a writ of error. The defendants in that case in the court below pleaded the general issue, and *two special pleas* in bar. The plaintiff demurred generally to the special pleas, and the defendants joined in demurrer. When the issue joined on the demurrer was called on for argument in the supreme court, the counsel for the defendants declined arguing it, and judgment was given, of course, for the plaintiff. It was held in this court that the plaintiffs in error, who were the defendants below, could not object to the propriety of the judgment which had thus passed against them by default. There was also a bill of exceptions in that case, taken upon the trial of the issue in fact, so that the writ of error was not dismissed; but the plaintiffs in error were confined to their bill of exceptions, and were precluded from *arguing the question arising upon the* demurrer. Chancellor Kent, who delivered the opinion of the court, put the decision principally upon two grounds: 1. The provision of the constitution, which declares, "that when an appeal from a decree in equity shall be heard, *the chancellor shall inform the court of the reasons of his decree;* and if the cause to be determined shall be brought up by writ of error, on a question of law, on a judgment in the supreme court, *the judges of the court shall assign the reasons of such their judgment;*" and he maintained that according to the just construction and spirit of this provision, no writ of error could be sustained in a case in which the opinion of the supreme court was never required or given, and in which, therefore, they had no reasons to assign to this court for their judgment. But independently of this provision of the constitution, he main-

ALBANY, Dec. 1831.

Kane v. Whittick.

tained, 2ndly. That according to the very theory and constitution of a court of appellate jurisdiction only, no writ of error would lie in such a case; that such a court is constituted merely for the correction of errors which some inferior court may have committed, and that such court cannot be said to have committed an error, when its judgment was never called into exercise, and the question of law intended to be raised upon the writ of error was never taken into consideration, but was abandoned by the acquiescence or default of the party who raised it. In *Henry* v. *Cuyler*, 17 Johns. R. 469, the plaintiff in error had suffered judgment to pass against him by default in the supreme court upon demurrer, in a case involving precisely the same question which had been before argued and decided by that court, in another cause, between different parties. The case was settled and brought to this court by consent of both parties, for the purpose of settling the question of law; but this court quashed the writ of error, for the reasons substantially which had been assigned in the previous cases. Chancellor Kent, who again delivered the prevailing opinion, puts it very distinctly upon the ground of a want of jurisdiction. He observes, that it could make no difference that the case was brought here by consent of both parties; that though consent might cure error, it could not confer jurisdiction; and that to discuss and consider in this court matters not brought before the court below, or which were abandoned by the party, would in effect be assuming *original jurisdiction.* Four of the *senators*, Messrs. *Skinner*, *P. R. Livingston*, *Hammond* and *Yates*, contended that that case formed an exception to the general rule, the propriety of which they admitted, inasmuch as the very question which arose in that case had been before in two other cases solemnly argued and decided in the supreme court, and that it would have been useless, therefore, to have attempted to argue it again in that court; that it was not to be supposed that the supreme court would overturn a judgment which they had so lately and so deliberately and solemnly pronounced; that the question presented by the writ of error was not, therefore, one raised for the first time, and which the court below had not considered and adjudged; that this court had the judgment

of the supreme court upon it, and the reasons of the court were to be found in the reports of the cases referred to. There certainly was great force in these considerations, and I think they must have prevailed, if this court had considered it a matter addressed to their discretion, and not a question of jurisdiction. The ommission on the part of the plaintiff in error was a mere matter of form. According to the settled practice of the supreme court, then and now, they would not have heard the question argued if it had been presented to them, but would have given judgment in conformity to the previous cases; but the objection was held to be fatal by a majority of this court, and the writ of error was quashed. In *Colden* v. *Knickerbacker*, 2 Cowen, 31, it was again decided that a writ of error would not lie, upon a judgment by default. The plaintiff in error did not appear in the court below, and the error relied upon was one appearing on the face of the record. Chancellor Sandford, who delivered the prevailing opinion, puts it distinctly on the ground of the want of jurisdiction. He says: "If a defendant, making no defence in the supreme court. suffering a judgment to be entered against him by default and making no application to that court for redress, might come before this court and ask the same redress which that court might have afforded, this court would become in effect a court of original jurisdiction, and would be employed in deciding questions which the supreme court had never determined. Such a course of proceeding would be inconsistent with the constitution, and pregnant with great mischiefs. The jurisdiction of this court is merely appellate; it is a jurisdiction to re-examine and re-judge; to affirm, reverse or alter determinations made by judges, who may give, and are bound to give reasons for their judgments."

This subject was again considered by this court in *Campbell* v. *Stakes*, 2 Wendell, 137, where it was decided that it could not be alleged for error in this court, that in a cause in the court below, where there were two issues joined, the jury had passed upon only one of them, it appearing that the question had not been brought before the supreme court on a motion in arrest of judgment, or otherwise; and the chanceller, after citing and noticing the cases which have been referred to, says,

ALBANY, Dec. 1831.

Kane v. Whittick.

"All these cases show the settled practice of this court, not to review a decision or judgment of the supreme court, or court of chancery, where the question has not been *actually passed upon*, or distinctly presented to the court below." *Houghton* v. *Starr*, 4 Wendell, 175, is the latest case in which this court has had this subject under consideration; and no disposition was there manifested to relax the rule established by the previous cases. The errors relied upon were, 1. That the verdict was imperfect, in as much as it passed only upon one of the issues joined in the case; 2. That the damages assessed by the jury exceeded the damages claimed in the declaration; and 3. That the judgment was general, whereas it should have been special, exempting the body of the defendant from imprisonment. No opinion of the supreme court was produced, and it was objected, preliminarily, that it was not shewn that the questions intended to be raised here had been presented to and passed upon by the supreme court. The plaintiff in error, for the purpose of showing that those questions had been presented and passed upon by the court below, produced exemplifications of certain affidavits and proceedings in the supreme court subsequent to the entry of the judgment, from which it appeared that a motion had been made to that court to set aside the judgment and execution, substantially on the grounds then assigned for error, and that the court denied the motion, and allowed the plaintiff in the judgment to amend his execution. The writ of error was dismissed, on the ground that the questions which it was intended to raise had not been presented to the court below in such a manner as to authorize this court to review the decision thereon; that most of the objections raised might have been presented to the court below, either upon a motion in arrest of judgment, or for a new trial, when the opinion of that court would have been regularly expressed, and might have been reviewed here upon writ of error.

From this review of the case it appears, 1. That this court has uniformly refused to entertain a writ of error or appeal from a judgment or decree, entered by *default* in the court below; the only exception is the case of *Cheetham* v. *Tillotson*, 5 Johns. R. 432, in which the objection was not raised in this court; 2. That this court will not permit a point to be

raised and discussed here, which was not raised in the court below; 3. That in these decisions the court has proceeded on the ground of a want of jurisdiction, as resulting *first*, from the very nature and constitution of a court like this, of appellate jurisdiction merely, and *second*, from that provision of the constitution which declares "that when an appeal from a decree in equity shall be heard, *the chancellor shall inform the court of the reasons of his decree;* and if the cause shall be brought up by writ of error, &c. *the judges of the supreme court shall assign the reasons of such their judgment;*" 4. That where the appeal or writ of error is from a decree or judgment by default, this court will not entertain it, although the identical question, in all its circumstances, in another cause between different parties may have been argued before the same court, and judgment pronounced, and a written opinion delivered and published by such court, assigning its reasons at length for such judgment, and that although the objection is not taken by the defendant in error, but the writ of error is brought by the consent of both parties. *Henry* v. *Cuyler*, 17 Johns. R. 469.

Let us now consider the bearing and operation of these principles upon the case before the court. The appeal, it will be recollected, is from the interlocutory decree of October, 1828, as well as from the final decree of August, 1829, and was filed on the 6th day of October, 1830. If the interlocutory decree only had been appealed from, the objection would have been unanswerable, that the appeal was not brought within fifteen days after the entering of the decree. The statute is peremptory, *that all appeals*, except those from *final decrees*, shall be made within 15 days after the making of the decree or order appealed from. 1 R. L. 184, § 9. If the appeal had been from the final decree only, without any reference to, or connection with the previous interlocutory decree, it would have been dismissed, on the ground that the decree appealed from was entered by default, the appellants not having sought or asked the opinion or judgment of the court below upon their case. Can the circumstance, then, that both decrees are appealed from, give force and efficacy to the appeal, when an appeal from neither, disconnected from the other, could be sustained? or can the interlocutory decree be used for the

ALBANY, Dec. 1831.

Kane v. Whittick.

purpose of sustaining the appeal from the final decree, when the interlocutory decree itself can be noticed only so far as it is connected with the merits of the final decree, and *because* it is so connected? In other words, can the *incident* be used to create or give vitality to the *principal?* From the best consideration which I have been able to give to the subject, it appears to me that the objection to the appeal on this ground is unanswerable.

But if the appellants had excepted to the master's report, and opposed its confirmation upon the final hearing, instead of suffering the decree to pass by default, I should still entertain very serious doubts whether an appeal from such final decree would open for consideration the prior interlocutory decree of October, 1828. I accede fully to the rule as laid down by Mr. Justice Radcliff, in *Le Guen* v. *Gouverneur & Kemble,* 1 Johns. Cas. 498, "that by an appeal from any interlocutory or final decree, all the proceedings in the cause anterior to the decree, are necessary to be presented to this court, and proper for its consideration. It may frequently become indispensable to reverse, alter or modify the previous proceedings in order to make them consistent with the decree to be pronounced. All antecedent matter is therefore necessarily before the court, and subject to its control." The reason here assigned for the rule shows its extent and limitation; all antecedent proceedings must be brought up, and may be considered by the court, because it may become indispensable to reverse, alter or modify them, in order to make them consistent with the decree to be pronounced. When the decree to be pronounced, upon the matter distinctly and appropriately appealed from, requires the modification of some previous order, in order to make it consistent with such decree, this court must, from the necessity of the case, have a right so to modify it. In *Le Guen* v. *Gouverneur & Kemble,* the chancellor had ordered a feigned issue, to try the question of fraud. After such order was made, the parties agreed to submit to the chancellor the question whether the respondents were not precluded from raising the question of fraud, in consequence of not having availed themselves of it as a matter of defence, in an action at law, which had previously been brought against them by the

appellant in relation to the same transaction. The chancellor decreed that the recovery at law did not preclude the respondents from seeking relief in equity against the fraud alleged; and in the same decree he also confirmed the former order, directing an issue, and the preliminary question was, whether the appellant was at liberty, upon that appeal, to question the order directing a feigned issue, on the ground that the appeal as to that order was out of time. Mr. Justice Radcliff held, that the agreement of the parties to submit the question to the chancellor whether the respondents were not precluded from raising the question of fraud, was a virtual suspension of the previous order directing an issue to try the fact of fraud, until the decison of the chancellor upon the point submitted; that the decree directing an issue was therefore to be considered as made at the same time with the other decree, and the appeal from it was therefore in season. Chancellor Kent, on this point, says, "The question on the order for an issue I consider regularly before us, as the decree *in the month of May*, declaring that the respondents were not barred, and from which the appellant has appealed, repeated and confirmed the order for an isssue, which had been previously, but conditionally given." He considered the order for an issue as substantially embraced in, and forming a part of the other decree. The question did not properly arise in that case, how far an appeal from a decree opens the previous orders and proceedings in the cause; and what was said by Judge Radcliff upon that point was strictly beyond the case. But I think he laid down the rule correctly, and with its proper limitations. The case of *Jacques* v. *The Methodist Episcopal Church*, 17 Johns. R. 548, was, so far as the question which we are now considering is concerned, very similar in its circumstances to the case at bar. The chancellor, there, on the 27th of June, 1815, made a decretal order, settling the principles on which an account was to be taken, and directing a reference to a master to take and state the account accordingly. On the 10th of April, 1817, the master made his report, to which the respondent took various exception; some of which were allowed, and some overruled by the chancellor. On the 15th June, 1818, the cause came on to be heard on the master's report, and the equities reserved,

ALBANY, Dec. 1831.

Kane v. Whitick.

and the chancellor made his final decree; from which the appeal was brought, and the question arose whether the appellant could bring in review the interlocutory orders and decrees made in the progress of the cause, and more than 15 days before the appeal was filed—and it was held by the court, that all the previous orders and decrees were open for consideration. I should infer from the language of Judge Spencer, who delivered the opinion of the court, that the principles established by the previous interlocutory decrees were all incorporated into, and formed a part of the final decree; a practice which I believe is not unusual in the court of chancery. If such was the fact, it would bring that case upon the ground on which Chancellor Kent put his opinion on the preliminary question in *Le Guen* v. *Gouverneur & Kemble.* But it must be conceded that Judge Spencer does not put his opinion upon that ground; nor am I prepared to say that it would be entitled to much weight. I cannot but think that the principle laid down by Judge Radcliff, in *Le Guen* v. *Gouverneur & Kemble,* was carried, in this case, beyond its legitimate extent. And the observation of Chancellor Jones, who was counsel in that cause is unquestionably true: "That if the principles contended for in that case, and on which the appellants proceeded, were to prevail, then every *interlocutory order* made in a cause may be appealed from within five years after the final decree is pronounced, although the statute has limited appeals from *interlocutory orders to fifteen days.*"

But independently of the statute, and upon general principles, applicable to the course of legal proceedings, a party ought not to be permitted to lie by, and subject his antagonist to the expense and delay which frequently attend a reference, and then, upon the coming in of the master's report, to object to the principles upon which the reference had been directed to be conducted. In *Atkinson* v. *Manks,* 1 Cowen, 709, I observed that the appellant was precluded from objecting to the order of reference, by having acted under it; that if that order established principles, or gave instructions to the master, which he thought erroneous, he should have appealed from it at once, instead of prosecuting the reference. After having tried the practical operation of those principles and instructions upon his rights, it is to late for him to object to them. Any

error that the master may have made in the application of those principles in the enquiry before him, is open for correction, upon the coming in of his report; but the principles themselves are the law of the master, necessary to be settled before he enters upon the reference, and therefore admitted to be settled by the parties who prosecute and conduct the reference. Where the decree to be pronounced in this court upon the matter appropriately brought up upon the appeal, requires the modification of some previous order to make it consistent with such decree, such order may be modified accordingly. But that principle, I apprehend, applies only to cases where the different orders or decrees are so blended together that the decision upon the one appealed from, necessarily involves the consideration of the other. No such necessary connection exists between a decree confirming a master's report upon a reference and the previous order directing the reference and settling the principles upon which it was to be conducted.

But I do not desire to put the decision of the question now before the court upon the ground which I have last been considering. The first ground seems to me to be conclusive, and I have adverted to the other because the general considerations involved in it appear to have a direct bearing upon the question immediately before the court, and tend to mark the strength and extent of my views in relation to it. I think the preliminary objection is well taken, and that the appeal should be dismissed on that ground.

By Mr. Senator Allen. By the act organizing this court, it is enacted that all errors happening in the court of chancery, the supreme court, or court of probates, shall be redressed and corrected by this court; and that all persons aggrieved by any sentence, judgment, decree or order of the court of chancery, may appeal from the same, or any part thereof, to this court, and that the court, if the appeal be from the court of chancery, shall require the chancellor to assign the reasons of such sentence, judgment, decree or order, and shall have full power to examine, hear, and finally determine all such appeals from the said court of chancery, and all matters concerning the same, and to reverse, affirm, or alter such sentence, decree or order,

and to make such other order or decree thereon as equity and justice shall require. 1 R. L. 133, 134. Thus, by the supreme authority of the state, all persons aggrieved by any decree or order of the court of chancery, are authorized to appeal from the same to this court; and if this is a privilege belonging to every citizen of this state, upon what authority has it been decided that no appeal lies from a decree of the chancellor, on default of the defendant in not appearing at the hearing? If the authority is derived from the common law of England, it has been abrogated by the statute organizing this court, as only such part of the common law is the law of this state as has not, since the 19th of April, 1775, been altered or repealed.

If this rule is to be enforced in every case in which the defendant may omit to appear at the final hearing, be the cause of his non-appearance ever so urgent, or his excuse ever so reasonable, it appears to me, great injustice may be done to suitors who may have just and reasonable cause for the course they may have pursued in the matter. In the case now under consideration, for instance, there was no manner of reason or cause whatever, for the appearance of the defendant in the court below at the making of the final decree of the chancellor. The complainant had presented his bill, going fully into the merits of his claim, and the defendants had answered the complaint. In addition, a mass of testimony, occupying 29 pages of the case, was produced, and the cause was submitted to the chancellor upon the pleadings and proofs and the written arguments of counsel. Every thing that could be said or proved on the merits of the case, was before the chancellor from August to October, 1828, when he made his first decree, and gave his opinion and reasons for such decree; by which the whole question in controversy is settled. The main question between the parties was, whether the deed from Whittick to Van Schelluyne was an absolute conveyance, or only a mortgage, and the chancellor decreed it to be a mortgage. He then decreed further, that Rogers and Sherwood, who had purchased the property from the appellants, should remain in undisturbed possession of the premises; that the master should state an account, charging the complainant with the bond of $564, with interest, and charging the defendants with

all sums received by Van Schelluyne after the date of said bond, also with interest; and also, with all sums received from the state, on account of the two lots which fell within the state of Vermont, also, with interest; also, with the rents and profits of lot No. 19, excepting so much as was applied to the maintenance of Henry Whittick, the idiot; also, with the purchase money received from Rogers and Sherwood, and interest thereon; and to ascertain what had been received by the defendants from the lot since the decease of Van Schelluyne, with the usual authority to the master to examine witnesses and compel the production of books and papers.

It is clear, therefore, to my mind at least, that every subject matter in controversy was settled by this decree; not a single item was left unattended to; and as it is presumed all the defendants appeared before the master and exhibited their testimony in the cause submitted, they of course knew the result the master had arrived at in stating the account. They knew also, that inasmuch as the chancellor had designated the several items of charge and credit, that there was no manner of probability, and that they had no reason from the circumstances of the case to believe, that from any thing they could object, this opinion, after having been deliberated on for two months, from August to October, 1828, would be changed or altered. The main question had been definitely settled, that the conveyance was a mortgage, and it was on the reversal of this decision that the whole mattter in controversy turned; they could, therefore, only hope for relief by an appeal to another tribunal. Under these circumstances, of what use would it have been for them to appear at the final decree on the master's report? Certainly none.

The final decree, confirming the report of the master, was made on the 28th of August, 1829. From the opinion of the chancellor I infer, that he considered the whole matter in controversy settled by his decree of October, 1828, as the reasoning of the opinion appears to be founded on the pleadings and evidence before him at that time; he thus embodies the decree, substantially, in his opinion, that the deed from Whittick was only intended by the parties as a security for the payment of money; that there must be a reference to a master to take

ALBANY, Dec. 1831. Kane v. Whittick.

and state an account, giving directions for his guide in the proceedings as already noticed. With these facts, and the circumstances attending them in view, it would, in my opinion, neither be consonant with equity, or the provisions of the statute, to deprive the appellants of the privilege of having their cause heard in this court.

Several cases were cited by the counsel for the respondents as authority for the motion to dismiss the appeal. They differ, however, from the case under consideration, in some respects at least. *Sands* v. *Hildreth*, 12 Johns. R. 493, was a final decree, and the only decree on the merits of the case; while in the case before us, the final decree was not on the merits, but on the report of the master. In *Jaques* v. *The Methodist Church*, 17 Johns. R. 548, it was held that an appeal from a final decree in a cause opens for the consideration of the court all prior or interlocutory orders or decrees in any way connected with the merits of the final decree. A final decree is that which is made when all the material facts in the cause had been ascertained, so as to enable the court of chancery to understand and decide on the merits of the case. There is nothing different between this definition of a final decree and the facts and circumstances upon which the chancellor grounded his decree of the 17th October, 1828; that dedcree ought, therefore, to be considered as final, on the merits of the question. In the case last cited, Spencer, justice, observed: "This court, (viz. the court of errors,) considers a decree final which is made when all the material facts in the cause had been ascertained, so as to enable the court to understand and decide upon its merits. There are some interlocutory orders that must be appealed from in fifteen days, such as an order for an issue, and others not necessary to particularize." I think I may safely conclude that the judge, from whose opinion I have quoted, would hardly have decided that the decree of the 17th October, 1828, was an *interlocutory* order or decree. In *Campbell* v. *Stakes*, 2 Wendell, 144, the question in controversy had not been brought before the supreme court by motion in arrest of judgment, or otherwise, and therefore is no authority in the present case. In *Houghton* v. *Starr*, 4 Wendell, 175, the question presented on the record before the

court of errors, had never been presented to the consideration of, or passed upon by the supreme court.

In *Travis* v. *Waters*, 12 Johns. R. 508, it was held that a decree is final when all the circumstances and facts, material and necessary to a complete explanation of the matters in litigation, are brought before the court, and so fully and clearly ascertained by the pleadings of both sides, that the court is enabled from them to collect the respective merits of the parties litigant, and upon full consideration of the case made out and relied upon by each, determine between them, according to equity and good conscience. Here, again, is a definition of a final decree which meets the case under consideration in every possible point in which it can be viewed. All the material circumstances and facts were before the chancellor when he made his decree of October, 1828, and so fully and clearly were they explained to his satisfaction, that he had no difficulty in determining between the parties litigant, as he viewed the matter, in equity and good conscience. In *Atkinson* v. *Manks*, 1 Cowen, 700, Sutherland, justice, observed: "It was contended that this decree was interlocutory, not final, and that the appeal, therefore, should have been entered within fifteen days after the making the decree." By that decree, the chancellor determined the bill of interpleader to have been properly filed; according to my view of the case, that was the material, and only material point, so far as the complainant was concerned, which the court was called on to decide, and the moment the decree was pronounced, the object was obtained which the complainant sought by his bill. In accordance with this opinion, I think I am authorized to hold, that by the decree of the 17th October, 1828, the chancellor having decided that the deed from Whittick to Van Schelluyne was a mortgage, he decided the only material point in the cause, so far as the complainant was concerned; and accordingly, the moment that decree was pronounced, the material object was obtained which the complainant sought by his bill.

The hurried manner in which I have been compelled to examine these cases, and prepare this opinion, must be my apology, if I have been led into any error as to the true bearing of any of the authorities cited or commented on; but in this I

ALBANY, Dec. 1831.
Kane v. Whittick.

cannot be mistaken, that the case of the appellants in this court is not precisely within the rule of any of the cases referred to.

This court is directed by the statute to hear and finally determine all appeals from the court of chancery, and to reverse or affirm all such decrees or orders appealed from, and to make such other order thereon as equity and justice shall require. We proceed, therefore, in accordance with this provision, to reverse or confirm the decrees of the chancellor when appealed from; and is not a decree by default as much the decree of the court of chancery as though it was made after argument, or on the pleadings in the cause? I can perceive no difference. I doubt the propriety of the rule contended for by the respondent in any case, and particularly in the present. It is in fact an invasion of the rights of the citizens of this state to say, that for the omission of a mere *form of proceeding*, they shall be precluded from the privilege of appealing to this court of the last resort—a court which I trust the people will never consent to part with. I think, from the best consideration I have been able to give the subject, that the motion to dismiss the appeal should be denied, and that the cause should be permitted to proceed.

By Mr. Senator Beardsley. It seemed to be conceded on the argument, that if the decree of August, 1829, had not been taken by default, and had been appealed from, it would necessarily have drawn into consideration the merits of the preceding decree, on the authority of *Jaques* v. *The Methodist Episcopal Church*, 17 Johns. R. 548.

If there is any doctrine well established by adjudications in this court, it is that a decree taken by default in the court below is not the subject of an appeal; nor will this court lend its aid to redress real or imaginary grievances, to which the attention of the court below has not been called by the party who seeks redress. These questions have so often and so recently been before the court, that it cannot be necessary to reiterate the reasons that have been assigned, but merely to refer to the authorities which sustain the proposition contended for. *Sands* v. *Hildreth*, 12 Johns. R. 493. *Gelston* v. *Hoyt*, 13

id. 575. *Henry* v. *Cuyler & wife*, 17 id. 469, &c. *Colden* v. *Knickerbacker*, 2 Cowen, 49. *Campbell* v. *Stakes*, 2 Wendell, 144. *Houghton* v. *Starr*, 4 id. 179.

This court is strictly of appellate, not of original jurisdiction, and a contrary doctrine would add greatly to its legal attributes. The question then is, was the decree of October, 1828, an interlocutory or a final decree? If interlocutory, it should have been appealed from in 15 days; if final, the present appeal is in due time, and must be sustained. It was not pretended that this was so far final as to be the subject of an enrolment under the statute, but it was contended that, as it settled the leading principles of the case, it was in its nature substantially a final decree. It appears to me that it was not such a decree as the statute contemplates as being final in the cause. The very best reasons exist for keeping up the distinction between interlocutory and final decrees. Each is the subject of appeal; but if a party wishes to appeal from an interlocutory order, good faith would seem to require that he should enter his appeal at once, and not put the party to expense and delay in proceeding under such order, where an appeal is intended to be brought. The impropriety of sustaining an appeal from an order where the party has in a measure admitted its correctness by acting under it, seems to be apparent. In the present case, had the appellants appealed directly from the order of October, 1828, the present respondent would not have been put to the expense and delay of a protracted and expensive reference.

It appears that the appellants were so far willing to acquiesce in the principles established by the chancellor, as to ascertain how the balance would stand on taking the account, and then on finding it against them, to appeal. Still, the party has a right to wait till the final decree is pronounced, and then, by an appeal from that decree, bring up antecendent orders for reversal or modification. But if he wishes to avail himself of this right, he must not suffer the final decree to be taken against him by default.

The decree of October, 1828, was not a final decree, within the meaning of the statute; it could not be enrolled; it did not settle all the rights of the parties; accounts were to be

ALBANY, Dec. 1831.

Kane v. Whittick.

taken, and equities were reserved till the coming in of the master's report. *Travis* v. *Waters*, 12 Johns. R. 509, 10. On the hearing of that report, all the rights of the parties were settled, and that was the final decree, and the only decree that could be enrolled as such. In Harrison's Chancery, 420, decrees are defined as follows: "A decree is *final*, when all the circumstances and facts, material and necessary to a complete explanation of the matters in litigation, are brought before the court, and so fully and clearly ascertained by the pleadings on both sides, that the court is enabled from thence to collect the respective merits of the parties litigant, and upon a full consideration of the case made out and relied upon by each, determine between them according to equity and good conscience. A decree is *interlocutory*, when it appears that some material circumstance or fact, necessary to be made known to the court, is either not stated in the pleadings, or so imperfectly ascertained by them, that the court, by reason of that defect, is unable to determine finally between the parties; and therefore a reference to, or an inquiry before a master, or a trial of the facts before a jury, becomes necessary to have the doubts occasioned by that defect removed; the court in the meantime suspends its final judgment until, by the master's report or the verdict of a jury, it is enabled to decide finally. Another thing also retards the completion of decrees: frequently long accounts are to be settled, incumbrances and debts to be inquired into, and a hundred little facts to be cleared up, before a decree can do full and sufficient justice. These matters are always by the decree on the first hearing referred to a master in chancery to examine, and then he is to report the fact as it appears to him to the court; the report may be excepted to, disproved or overruled, or otherwise is confirmed and made absolute by the court. When all issues are tried and settled, and all references to the master ended, the cause is again brought to hearing upon the matters of equity, and then a final decree is made. 3 Black. Comm. 453. "A final decree is that which is made when all the material facts in a cause have been ascertained, so as to enable the court of chancery to understand and decide on the merits of the case." *Jaques* v. *Meth. Epis. Church*, 17 Johns. R. 548.

Appeals, although matters of right, are not to be encouraged; and the object of the law in requiring an appeal from an interlocutory order to be entered in 15 days, is to expedite legal proceedings, to save the expense of proceeding under these orders, and to prevent captious objections merely for the purpose of delay. The policy of the law requires a party in chancery, as well as at law, to avail himself of an objection at the first opportunity, and in most cases an omission to do so is considered an acquiescence in the correctness of the proceedings, or a waiver of the matter that might be urged as an objection, if urged at a proper time. Thus, in suits at law, where a default has been obtained, and the defendant, instead of applying at once to set it aside, chooses to take his chance before a sheriff's jury on executing a writ of inquiry, it must be a case of peculiar and marked distinction, if a court could be induced to set aside a default. In this view of the case, it may even be doubted whether the appellants, by appearing before the master instead of directly appealing from the first order of the chancellor, have not precluded themselves from objecting to that order, even if they had appeared on the final hearing, and whether any other objection could have been raised, had they appeared, except an objection to the master's report.

On the whole, I am for dismissing this appeal. I see nothing in the policy of the law to induce this court to retain it, or in the merits to warrant the court in straining for reasons to sustain the appeal.

By Mr. Senator MAYNARD. I understand it to have been admitted on the argument, that if the appeal be properly brought from the *final decree*, it brings up the decretal order directing a reference, and settling the principles upon which it should be conducted; and if not, that there can be no appeal. The only question, therefore, presented by this preliminary objection is, whether the appeal is properly brought from the final decree.

Analogous questions have frequently been decided in this court, but this precise question has never been presented. In all cases where this court has dismissed a writ of error or an

ALBANY, Dec. 1831.

Kane v. Whittick.

appeal upon a similar objection, it has acted upon the principle, that as this is a court of appellate jurisdiction, it will not review a judgment or decision, unless the questions presented here, have been actually and distinctly presented to the court below, so that the judgment or decision of that tribunal might have been pronounced upon them. Upon this principle this court has refused to entertain a writ of error, where a party had declined to argue a demurrer and suffered judgment to be rendered against him by default. *Gelston* v. *Hoyt*, 13 Johns. R. 561. *Henry* v. *Cuyler*, 17 id. 469. Also in a case where there had been no appearance in the cause on the part of the defendant, but all proceedings had been taken upon his default. *Colden* v. *Knickerbacker*, 2 Cowen, 31. Also where a judgment had been rendered after verdict, and the supposed errors existing in the record had never in a proper manner been submitted to the supreme court. *Houghten* v. *Starr*, 4 Wendell, 175. In like manner this court dismissed an appeal where the cause had been regularly set down for a hearing on bill and answer, and on due notice the party appealing did not appear, but suffered a decree to be entered against him by default, when he might have had the decision of the chancellor upon the merits of his cause. *Sands* v. *Hildreth*, 12 Johns. R. 493. In all these cases it was a question of jurisdiction, and it was held that the party seeking the aid of this court, had not done enough to confer jurisdiction; and in one case, that it could not be given by consent.

The reason urged for the dismissal in these cases was drawn from the constitution, which requires the court below to assign the reasons of its judgment or decision. This is an impossibility where the merits of the cause have not been presented to the court. This court could not, therefore, acquire jurisdiction of the cause, and solely on account of the default of the party seeking its aid. This case differs from all those, and the principle that governed the decision in them has, in my view, no application to the facts in this. The appellants did appear at the hearing on the merits in this cause, and did present to the chancellor the reasons which they assign for error here. That officer has informed us of the reasons of his decision, and his opinion proves that the cause was fully dis-

cussed and considered. What more can be necessary to shew that this case is not within the reason of those decision? It is said this court has decided that it will not review a judgment or decision which has been rendered upon a default. It has so decided, but always upon the same principle and for the same reason—that the party appealing had not presented to the court below the causes assigned for error here; and that the court below had not, because it was impossible, informed this court of the reasons of its judgment or decision. To apply those decisions to this case, where the appellants have done precisely what there had been a failure to do in the others, and where the chancellor has given those reasons, the want of which in the other cases deprived this court of jurisdiction, would be to substitute the fact of decisions for the principles and reasons that governed and justified them.

It is true, the appellants did not appear when the master's report came in and the final decree was made. Why should they? What necessity or use was there for their appearance? The master had governed himself in making his report by the principles prescribed by the chancellor, and the appellants had no objection to make to the manner in which he had executed his trust. They contested the principles prescribed to him, and not the report made in accordance with them. The case presents the question whether a mere bodily personal appearance in the court room, and in answer when the cause is called on the final hearing, is requisite to enable a party to bring into this court a cause which has been strenuously contested and fully discussed in the court below. To come into this court is matter of right; it is secured by the constitution and the laws; there is no restraint upon its exercise and enjoyment, except what is created by the appellate character of this court, and the constitutional requirement that the court below shall assign to this the reasons of its judgment or decree. If a party by his own default withdraws the merits of his cause from the consideration of the court below, and thereby renders impossible a compliance with that constitutional requirement, he waives his right to have the judgment or decree of the inferior tribunal reviewed in this court. His own act has rendered such review impossible within the intend-

ALBANY, Dec. 1831. Kane v. Whittick.

ment of the constitution ; but if he has brought the merits of his cause fully before the court below, and urged them upon its consideration, and that court assigns to this the reasons of its judgment or decree, in my view, both the party and the court have fulfilled their duties. All is done that the constitution or the laws requires to give this court jurisdiction, and if it have jurisdiction, I cannot discover upon what principle it can refuse to hear a cause brought hither for its review.

It is true a party may appeal from every interlocutory order of the court of chancery, whereby he may be aggrieved, but there is no constitutional or statutory provision that he shall so appeal or be precluded from appealing from the final decree ; nor is there any such provision that a party shall appear at the final hearing, if he have done his duty in the previous stages of the cause, to entitle him to the exercise of his right to come into this court. What practical utility can attend such an appearance ? If the appellants in this cause had appeared, they could not have had permission to re-argue their cause. Its merits had been fully discussed and decided. All they could have been allowed to do would have been to object to the proceedings subsequent to the decretal order. In case of an appearance, the reasons of the chancellor would have been precisely what they are now. What then would have been gained by an appearance in point of jurisdiction ? I am not aware that the decision of this preliminary question can be important to the interests of the parties in this case, but in my view it involves a question of constitutional and legal right. Believing that the appellants have satisfied the requirements of the constitution and the practice of this court, and that none of its decision forbids us to entertain this appeal, my opinion is, that the motion to dismiss should be denied.

The appellants cannot assign for error or avail themselves of any thing that occurred in the cause after the decretal order, because by their non-appearance they waived all objections to the subsequent proceedings.

On the question being put, *Shall this appeal be dismissed?* the members of the court expressed their opinions as follows:

In the *affirmative*—The CHIEF JUSTICE, Mr Justice SUTHERLAND, and *Senators* ARMSTRONG, BEARDSLEY, CONKLIN, DEITZ, FOSTER, GERE, HUBBARD, McLEAN, REXFORD, TALLMADGE, THROOP, TODD, WESTCOTT—15.

In the *negative*—*Senators* ALLEN, BRONSON, DODGE, LYNDE, MATHER, MAYNARD—6.

Whereupon the appeal was *dismissed.*