MITCHELL, *appellant*, and LENOX and others, *respondents.*

On an *appeal* to the chancellor, from the decree of a vice chancellor, the cause must be heard on the pleadings and proofs as they existed in the court below, and no new testimony can be introduced.*

APPEAL from chancery. In April, 1830, the appellant filed his bill for *an account* against the respondents, as *trustees* under a voluntary assignment made by him on the 20th January, 1798, for the benefit of his creditors; the balance, if any, to be paid to him. The defendants answered acknowledging the execution of the deed of trust, but alleged that encountering difficulties in the execution of the trust, it was agreed between the trustees and the creditors of the appellant, that the trustees should transfer the property conveyed to them to three *new trustees*, viz. J. M'Evers, D. A. Ogden and John Day, to execute the trusts originally reposed in the respondents; and that in pursuance of such agreement, all the prop-

---

* See dissenting opinion of *Senator* TRACY upon the *merits* of this case—which differs from the other opinions delivered, as to the evidence necessary to justify the presumption of *acquiescence* in the execution of a deed affecting the rights of a party.

erty conveyed by the appellant was transferred to the new trustees by deed bearing date 8th February, 1812. That in the drawing of the deed, the appellant was *named* as a party, but that for some cause which they cannot account for, it was not *executed* by him ; but that they verily believe that the appellant was privy to the whole transaction, and did not object to it. That since the execution of the last deed the respondents have not intermeddled with the estate or property of the appellant, and that all the monies received by them as the avails of the estate were applied to the purposes of the trust or paid over to the new trustees, who since their appointment have had the sole management of the property, and to the survivor of whom alone, viz. John Day, the appellant ought to look for an account, &c. A replication was filed to the answers thus put in, and proofs were taken in the cause. The deed from the respondents to the new trustees was produced, executed in the presence of two witnesses, proved before a master in chancery in April, 1812, and in the same month and year recorded in the office of the secretary of state. It was also proved that *John Day*, one of the second set of trustees, took the principal charge and management of the trust estate and a book of entries kept by him relative to the estate was produced, the first entry being of the date of the 21st April, 1812; that he continued in the management of the estate until 1825, when he removed to England, where he now resides. On his removal, he and Ogden his co-trustee empowered one J. Brower to attend to the concerns of the estate, and who has accordingly done so since that period. Brower testified that during the time that Day had the management of the estate, the appellant was frequently in the counting-house of Day, and had repeated conversations with him relative to the estate, as he believes; and that Day paid two dividends to the appellant as the agent or attorney of two of his creditors, one of seven and the other of fifteen per cent. The receipts of the appellant for such dividends were produced, one bearing date 4th January, 1816, the other 22d May, 1822, in which the appellant acknowledges to have received from *David A. Ogden, James M'Evers* and *John Day,* the sums set opposite his name as the agent of certain creditors, being dividends aris-

ALBANY,
Dec. 1835.

Mitchell
v.
Lenox.

ing from the estate of the appellant under the assignment made by him *to the respondents* on the 20th January, 1798. On these pleadings and proofs, the cause was heard before the vice chancellor, who after the hearing dismissed the bill of the appellant, without prejudice however to his right to make the respodents parties to a new bill against the new trustees or the survivor of them. The appellant appealed to the chancellor. On the hearing before the chancellor, the respondents produced a written instrument bearing date 26th June, 1811, signed by a number of the creditors of the appellant, assenting that the *original trustees* should convey all the assigned property to the *new trustees,* as stated in the answer of the respondents—and to which instrument the *appellant affixed his name,* not only in his individual capacity, but also as the attorney of two of the creditors. They also produced a receipt of the appellant, bearing date 16th February, 1830, in which he acknowledged to have received of *John Day, surviving trustee of his estate,* $70, in anticipation of the next dividend to be declared of the effects of the estate, and which would be due to him as the representative of the debts belonging to two of his creditors. The appellant objected to the *new testimony* thus produced. The chancellor *affirmed* the decree of the vice chancellor, upon the ground that the evidence before the vice chancellor was amply sufficient to justify the conclusion that the appellant had assented to or subsequently ratified the assignment *to the new trustees.* In reference to the new testimony produced before him, the chancellor in delivering his opinion observed : " These two exhibits, if admissible as evidence here, are conclusive to show that the complainant assented to the assignment to the new trustees, both before and after it was executed. But I am inclined to think they cannot be read for the purpose of preventing a reversal of the decree of the vice chancellor ; although the appellate court ought not to consider itself so far bound by the evidence in the court below as to proceed and make a final decree upon such reversal, when it is manifest that injustice must be done to the respondents by such proceeding. My present impression is, that the proper course to be adopted in such a case, if the vice chancellor has decided wrong upon the evidence which was be-

fore him, is to reverse the decree and send the cause back
to him, with a permission to the defendants to apply to open
the rule for closing the proofs, and to introduce the new tes-
timony or exhibits as evidence, upon such terms as the vice
chancellor may deem equitable and just, or to retain the cause
before the chancellor, with liberty to the defendants to make a
similar application here previous to a final decree of the cause
upon such reversal. I do not, however, wish to be consid-
ered as expressing a definitive opinion upon either of these
questions, as the conclusion at which I have arrived upon
the testimony which was before the vice chancellor, ren-
ders a decision upon the question as to the propriety of in-
troducing new evidence in any form unnecessary."

*J. S. Mitchell*, for the appellant, insisted that the evi-
dence before the vice chancellor was wholly insufficient to
justify the conclusion that the appellant had acquiesced in
the assignment to the new trustees; he urged that there can
be no *acquiescence* in a transaction, without *knowledge* of
the existence of such transaction, and contended that there
was not a particle of proof before the vice chancellor to es-
tablish the fact that the appellant knew of the existence of
the assignment to the new trustees. As to the new proofs
produced before the chancellor, he insisted that they were
improperly received, as the proceeding before him was not
a *rehearing* but an *appeal,* in reference to which the only
power the chancellor had was to *affirm* or *reverse* the de-
cree upon the facts as they existed in the court below; and
although the chancellor disclaimed having acted upon the
new proofs in making his decree of affirmance, still the coun-
sel urged that the latter decree should be reversed, as such
proofs may have unconsciously influenced the mind of the
chancellor and induced him to view the proofs before the
vice chancellor in a light different from what they would
otherwise have appeared.

*T. L. Ogden & P. A. Jay*, for the respondents, in support of
the position that there was sufficient evidence of *acquiescence,*

ALBANY,
Dec. 1835.

Mitchell
v.
Lenox.

cited *Fonbl. Eq. b.* 1, *ch.* 3, § 5 ; 3 *Swanst.* 1 ; 2 *Bro. C. C.* 225 ; 3 *Johns. Ch. R.* 3.

The following opinions were delivered :

By Mr. Justice NELSON. The chancellor I think was right in laying out of consideration, the newly discovered evidence of the fact of the consent of Mitchell to the assignment to the new trustees, that was presented on the hearing of the appeal. The practice would be inconvenient and liable to abuse.

The language of the statute prescribing and regulating appeals fairly imports that the case is to be heard upon the pleadings and proofs as they existed in the court below. The chancellor is authorized to direct " the manner in which appeals shall be brought to a hearing before him ; and the papers and documents which shall be transmitted therewith, and by whom." 2 *R. S.* 178, § 61. This has been done in the 116th, 117th, 119th and 120th rules of the court of chancery, and obviously with reference to the hearing of the appeal on the original papers. The 64th section, 2 *R. S.* 178, also declares that an appeal shall not be made from any order or decree of a vice chancellor to the court for the correction of errors, until brought before the chancellor for review, and shall have been by him reversed, modified or affirmed ; very clearly indicating that his jurisdiction is appellate, and confined to the pleadings and proofs upon which the case had originally been heard in the court below. This being my view of the statute, I deem it not material to look into the practice in England in the supposed analogous case of an appeal from the master of the rolls to the lord chancellor. If the legislature had not intended that the hearing of the chancellor should be strictly a review and nothing more, they would have provided for the introduction of fresh evidence. *Reverse* and *affirm* are not appropriate terms, where the correctness of the order or decree below, is made to depend upon the production of new testimony. If that had been intended, the appeal *per se* ought to have opened such order or decree, and the case put upon the footing of a proceeding *de novo,* as to proofs and hearing. [The judge here went into a full examination of the pleadings

and proofs, as they existed before the vice chancellor, and concurred in opinion with the vice chancellor and chancellor, that the evidence was amply sufficient to justify the conclusion that the appellant had assented to, or subsequently ratified the assignment to the new trustees; and accordingly was of opinion that the decree of the chancellor ought to be affirmed.]

*By Senator* TRACY. The complainant's bill was dismissed by the vice chancellor, on the ground that the defendants had legally discharged themselves from the trust originally conferred on them by the complainant, by transferring it to other persons. It is admitted, or if not admitted, it is clear that such a transfer could not be effectual, except by the act of the complainant, or by something equivalent on his part. There was before the vice chancellor no evidence to show the act by the complainant, but the equivalent for the act was sought in circumstances creating a presumption that he acquiesced in the act of the defendants, by which they intended to transfer the trust. No doubt acquiescence, under some circumstances, is equivalent to an express assent, or ratification, so that equity will conclude a party equally as if he had executed a formal deed; but acquiescence presupposes perfect knowledge of facts; for though there is a silent " cunning in dumbness," there cannot be in law an unintentional assent. The burthen of proving knowledge of a fact is therefore necessarily throw upon him who proposes to conclude another by his acquiescence in it. In this case, before the vice chancellor, there was no certain proof that the complainant ever knew of the deed of assignment from the defendants to M'Evers, Ogden and Day. Undoubtedly there are circumstances to create a strong presumption that he knew of it; but unless knowledge of the fact is clearly shown, it seems to me there is nothing from which acquiescence in the fact can be safely inferred. It is drawing one presumption from another; inferring a conclusion from premises, which themselves are only inferential. A party is to be concluded as though he had executed a formal deed, which he did not execute, on the ground that he acquiesced in its execution by others, without

ALBANY,
Dec. 1835.

Mitchell
v.
Lenox.

positive proof that he ever knew of its being executed at all. To say the best of it, this is a loose and dangerous mode of creating parties to formal and solemn instruments. I know no case where the doctrine of acquiescence is carried to such an extent. The cases cited for the defendants do not reach this difficulty.

But the vice chancellor thinks the knowledge of the complainant was not left to inference, but is positively proved by the testimony of *Brower* ; and the chancellor puts his concurrence in the vice chancellor's decree on the same testimony. He thinks " there is scarcely a possibility that the complainant should not have known of the new assignment, and that the trustees were proceeding to execute the trust under the same." I am not able to discover this conclusiveness in *Brower's* testimony. It undoubtedly shows that the complainant must have known that the estate was in the management of Mr. Day ; but so far from its proving positively a knowledge of the deed of transfer, by which the defendants claim to be relieved from the trust, it does not clearly appear that this deed was known by the witness himself. The receipts for dividends are not calculated to prove the complainant's recognition of the transfer, but rather the reverse, as the original assignment to the defendants is the only one to which they refer. The time elapsed since the trust was transferred, and that it was done openly and no concealment attempted, amount to nothing, unless knowledge in the complainant is proved. This knowledge it is, that can alone give any force to the transfer of the trust. The defendants, by taking the original assignment from the complainant, had incurred a responsibility to him, from which he alone could relieve them. It is not, therefore, the existence of the deed of transfer, purporting to be made with the assent of the complainant, but his knowledge of such a deed, and his acquiescence in it, that must release the defendants from their original liability. Such a knowledge should be proved with the same certainty as the deed of transfer itself, before any thing is established from which the complainant's acquiescence can be inferred. A mere balance of probabilities can never form a safe basis for a

conclusion, from which another conclusion is to be inferred. The testimony before the vice chancellor leaves it uncertain whether the complainant knew of the deed of transfer, and until it is certain that he knew of it, I can find nothing to justify a conclusion that he acquiesced in it.

The more interesting question which the case presents, is whether the defendants were entitled to introduce new testimony before the chancellor which was not before the vice chancellor; or in other words, whether an appeal from a vice chancellor to the chancellor is only a re-hearing in the same court, or is a review by an appellate tribunal of the very case as it was presented at another tribunal. If it should be conceded that such an appeal is only a *rehearing* in the same court, it would still be carrying the doctrine of new proof to an unknown length, to allow its introduction by the party in whose favor the decree is already made. Chancellor *Kent* in *Dale* v. *Roosevelt*, 6 *Johns. Ch. R.* 255, gives the rule for introducing such proof on a rehearing. " A party," he says, " may no doubt be let in, to read fresh evidence, not read on the former hearing ; but it must be evidence already duly taken and *omitted*, or such testimony as might be given *viva voce* at the hearing, or that goes to show the incompetency of a witness in a former deposition." Lord *Eldon*, 2 *Russell*, 91, says, on a rehearing, testimony may be read that was not read at the first hearing, but it must be such as had been taken before the first hearing. But an *appeal* from a vice chancellor to the chancellor is not a rehearing at the same tribunal, but a review of the same case by a distinct and superior tribunal. The organization of our court of chancery in this respect differs from that of England. There every decree in chancery is enrolled as the decree of the lord chancellor, and must be signed by him. It is because every decree of the master of the rolls has to be enrolled as the decree of the lord chancellor that Lord *Parker* says, in *Wright* v. *Pillings, Precedents in Chancery*, 496, he would consider the cause open before him, and the party against whom the decree was, at liberty to offer what he could against signing and enrolling it. This is the principle of the decisions, 1 *Vern.* 442, and 2 *id.* 463, and again in 13 *Vesey,* 423.

In 2 *Russell,* 91, Lord Eldon says, " If what is called an appeal from the rolls be only a rehearing, there is stronger ground for saying that an appeal from the vice chancellor is only a rehearing ; for the vice chancellor, where he hears a cause, hears it for the lord chancellor." To see the propriety of this remark, it is only necessary to refer to the act of 53 *Geo.* 3, *ch.* 24, establishing the office of vice chancellor, which not only subjects all his orders, decrees or acts to reversal, discharge or alteration by the lord chancellor, but declares that no decree or order made by him shall be enrolled until it shall be signed by the lord chancellor ; and so far from an appeal in the natural and legal sense of the word being provided by the act, it is incompatible with its principles. But our law establishing the office, and prescribing the powers and duties of vice chancellors, not only gives to them distinctly the power to sign the enrolled decree, but in express terms makes their proceedings " subject, in all cases, to the appellate jurisdiction of the chancellor." *Vide* 2 *R. S.* 181, § 91. *Id.* 177, § 55. Other sections, 59 *to* 62, inclusive, prescribe the right, time, mode and conditions of an appeal, as well where a decree has been, as where it has not been enrolled. *Section* 64 prevents an appeal to this court, until the order or decree of the vice chancellor shall have been reviewed and passed on by the chancellor. There are other provisions of the statute equally explicit of the design to make the review by the chancellor strictly of an appellate character, as much so, I imagine, as is the review by this court of the judgments of the chancellor and of the supreme court. But it seems unnecessary to make further references ; as it also does to press in considerations of general policy to sustain positive legislative enactments, although were they equivocal, there could be found abundant and forcible reasons for fixing landmarks and defining limits for the chancellor's discretion, in cases of such appeal.

Concluding, as I do, that the vice chancellor decided wrong upon the evidence before him, and that the new evidence which the chancellor permitted to be taken cannot be used in aid of the vice chancellor's decree, I am still disposed to adopt the chancellor's suggestion as to the form of judgment to be rendered :

that is, to reverse the original decree, and send the cause back to the vice chancellor, with instructions to permit the rule for closing the proofs to be opened, and new testimony admitted, on such terms as he may deem equitable.

An opinion was also delivered by Senator EDWARDS, substantially concurring in the opinion delivered by Mr. Justice NELSON.

On the question being put, *Shall this decree be reversed?* all the members of the court, (twenty being present) with the exception of Senator TRACY, voted in the negative. Senator Tracy voting in the affirmative.

Whereupon the decree was affirmed.