BANK OF ORANGE COUNTY and another *vs.* FINK and others.

Where F. being in embarrassed circumstances and suits being pending a-
gainst him, conveyed his real estate to T., in trust to sell the same, and
out of the proceeds to retain a large debt due himself, and to apply the
residue in payment of other creditors; and T. permitted F. to retain the
possession 4 or 5 years under a nominal lease to his son, without exacting
the payment of any rent, and until after several judgments had been re-
covered against F. for debts contracted previous to the conveyance; it
was held that the conveyance was fraudulent and void as against the cred-
itors of F.

It seems that on an appeal from a final decree made in a suit before a vice
chancellor, the merits of an interlocutory decree made in such suit cannot
be inquired into; especially where the time for appealing from the interloc-
utory decree has expired.

IN August, 1823, the defendant P. Fink, being in embar-     March 6.
rassed circumstances, and a large judgment being about to
be entered up against him, conveyed his real estate to the
defendant Townsend in trust to sell the same, and out of
the proceeds to retain a large debt alleged to be due to
himself, and to apply the residue of the proceeds to other
creditors. The assignee, instead of selling the property,
permitted Frink to retain the possession four or five years,
under a nominal lease to his son A. H. Fink for most
of the time, and until after the complainants severally
had recovered judgments against P. Fink, for debts con-
tracted previous to such conveyance. Townsend having
then advertised the property for sale, and the complainants
having taken out executions upon their judgments, claiming
a lien upon the land on the ground that the conveyance
was fraudulent and void as against creditors, an arrange-
ment was entered into between the parties, in writing, by
which it was agreed that the property should be sold dis-
charged of the lien of the judgments; and that a portion of
the proceeds of the sale, or of the bonds and mortgages ta-
ken for the purchase money, should be deposited with the
cashier of the Orange County Bank, as a substitute for the
land itself, to abide the event of a suit in equity, to be

1838.

Bank of Or-
ange County
v.
Fink.

brought by the complainants, to test the validity of their liens by virtue of their several judgments. The land was sold and the securities deposited accordingly; and the bill in this case was then filed in pursuance of the agreement. To which bill P. Fink and Townsend, together with A. H. Frink the son, were made parties defendants. The cause was afterwards heard upon pleadings and proofs before J. Emott, the late vice chancellor of the second circuit; who in June, 1830, made an interlocutory decree in favor of the complainants; in which he declared and decreed that they were entitled to the payment of the amount due on their respective judgments against P. Fink, out of the land conveyed to Townsend; and therefore, that under the agreement recited in the decree, they were entitled to have their judgments paid and satisfied out of the proceeds of the bonds and mortgages constituting the special fund provided for that purpose by the agreement of the parties. And it was referred to a master to compute and ascertain the amount due to the complainants for the principal and interest of their respective judgments; and all further directions were reserved until the coming in and confirmation of the master's report. No appeal was taken from this decree; and after the report of the master came in, the cause was heard upon such report, and for the purpose of obtaining a final decree upon the equity reserved. In October, 1830, the vice chancellor made a final decree, confirming the report of the master, and directing the amounts due upon the judgments of the complainants respectively, together with their costs, to be paid out of the proceeds of the bonds and mortgages substituted in the place of the land by the agreement of the parties. And he directed the residue of such proceeds to be paid to the defendant Townsend. In April, 1831, more than nine months after the entering of the interlocutory decree settling the rights of the complainants to the payment of their judgments out of this special fund, the defendants Townsend and Philip Fink, appealed from the final decree of the vice chancellor confirming the master's report and directing

such payment in conformity to the rights of the parties as established by the previous decree.

*S. J. Wilkin & H. G. Wisner*, for the appellants.

*J. W. Brown & I. R. Van Duzer*, for the respondents.

1838.

Bank of Or-
ange County
v.
Fink.

THE CHANCELLOR. From the conclusion at which I have arrived on the main question in this cause, I do not deem it necessary to give any definitive opinion upon the question, whether the merits of the interlocutory decree can be inquired into upon this appeal. The statute, for reasons which are perfectly obvious, has limited the right of appeal from interlocutory orders and decrees to fifteen days. It is evident, however, that this statutory limitation is a mere nullity, if an appeal from the final decree in the cause necessarily brings up for review before the appellate court every interlocutory order, made in the course of a long litigation, which has had any effect whatever in producing the final result. It is a general rule, that upon an appeal from any order or decree of the inferior tribunal, the appellate court is to make such a decree as the court below ought to have made when the decree or order appealed from was entered. Where the court below therefore, upon the papers before it at the final hearing, is authorized to go back and correct an erroneous proceeding connected with the matter then under consideration, the appellate court may itself go back and correct such error; if the court below was called on by the appellant to make the correction but neglected to do so. But if the situation of the cause was such at the final hearing, that the court below could not, upon the papers then before it and according to the settled course of proceeding, go back for the purpose of looking into the matter of the alleged error in a previous order or decree, it would be a violation of all principle for the appellate court to reverse the final decree, because the court below at the time of making such decree had not done what it had then no power to do. In other words, the final decree cannot be erroneous, so as to justify a reversal

1838.

Bank of Or-
ange County
v.
Fink.

of it, upon an appeal from that decree alone, if at the time it was made the court below had no legal right to make any other, consistently with the justice and equity of the case as then presented for consideration and decision. And any attempt of the chancellor to convert a nominal appeal from the final decree of a vice chancellor, in such a case, into an actual appeal from an interlocutory order or decree which had been previously made in the cause, after the time for appealing from such interlocutory decree had expired, would be a virtual repeal of the statute limiting the right of appeal from interlocutory orders and decrees to fifteen days. It is true, the chancellor is expressly authorized upon the hearing of an appeal, to annul, affirm, modify or alter the order or decree appealed from, or to make any other order in the cause, as justice may require. (2 *R. S.* 178, § 68.) But certainly this provision of the revised statutes could not have been intended to give to the chancellor an original jurisdiction, to make an order or decree upon the appeal which the vice chancellor was not authorized to make at the time the cause was heard before him ; unless something had occurred, subsequent to the hearing of the cause in the court below to change the rights of the parties from what they were at that time. The court for the correction of errors, in the recent case of *Mitchell* v. *Lenox & others*, (14 *Wend. Rep.* 662,) by a formal resolution, which is not mentioned in the report of the case, decided that the jurisdiction of the chancellor upon an appeal from a decree of the vice chancellor was strictly appellate, and that the question as to the affirmance or reversal of the decree must be decided under the same evidence and papers on which the vice chancellor's decision was founded. From this determination of the court of demier resort, it is clearly inferrible, that if the final decree of the vice chancellor was right upon the papers before him upon the final hearing, and was the only decree which it was proper for him to make upon the case as then presented for his decision, the chancellor has no right to reverse such final decree on the ground that some previous order or decree in the cause,

which was not appealed from within the time allowed by law for that purpose, may have been erroneous.

The decision of the court for the correction of errors in the case of *Le Guen* v. *Gouverneur & Kemble*, (1 *John. Ca.* 498,) is perfectly consistent with these principles. In that case, a question of fraud was raised by the pleadings, and an issue was directed to try the question. By a subsequent agreement of the parties, this order for a feigned issue was virtually waived for the purpose of submitting to the court a question which had not been raised when the issue was directed ; to wit, whether the complainants were estopped from raising the question of fraud, by the result of a previous decision in a court of law. This was a virtual rehearing of the cause upon the merits; and the chancellor decided against the defendant upon the question of estopple, and reaffirmed his decision directing an issue to try the question of fraud. And as the appellate court were of opinion that the decision of the court below was wrong, both as to the question of estoppel and as to the propriety of awarding a feigned issue upon the evidence adduced upon the hearing, they made such a decree as the chancellor ought to have made upon the last hearing before him, and dismissed the bill with costs to the defendants upon the proceedings in the court below.

In the present case, I think no one who is conversant with chancery proceedings would seriously contend that the vice chancellor upon the hearing of the cause upon the equity reserved, which was a mere question of costs and a direction to pay the amounts as ascertained by the master, was authorized to reverse the decision and decree which he had previously made, settling the right of the complainants to be paid out of the fund in question. And if the vice chancellor had no power to reverse such interlocutory decree upon the final hearing, when no such question was presented for his consideration, I do not perceive upon what principle the chancellor is authorized upon this appeal from the final decree to reverse that decree as erroneous. Indeed I should have had no doubt whatever on the question, had it not been for the decision of the court

for the correction of errors, in the case of *Jaques* v. *The Methodist Church*, (17 *John. Rep.* 548.) The court in that case appears to have arrived at the conclusion, that as the chancellor had the power upon a proper application to re-hear and modify any interlocutory order or decree previous to the making of the final decree in the cause, the appellate court, upon an appeal from such final decree, had in certain cases a right to do the same thing; even where no application had been made to the chancellor on the final hearing to alter or modify such interlocutory order or decree. But even in that case, C. J. Spencer admits there are some interlocutory orders which must be appealed from within the fifteen days limited for that purpose by the statute. If it was ever permitted to this court to question the correctness of any decision of the court of demier resort, I might be allowed to say, that the learned chief justice in that case had followed the practice of the house of lords in England, without adverting to the change which has been necessarily made in this state by our statute, limiting the right of an appeal from an interlocutory order or decree to fifteen days. In England, there was no statutory limitation whatever for an appeal, either from an interlocutory or a final decree. But by a standing order of the house of lords, no appeal from any decree was to be received after five years from the signing and enrolling of such decree. (*Sydney on Appeals, Append.* 13.) As there was no limitation of the right to appeal from an interlocutory decree which was not capable of enrolment, until after five years from the time of making the final decree which was enrolled, the common practice in England was, upon an appeal from the final decree, to complain also in the petition of appeal of any previous proceedings in the cause connected therewith, so as to bring the whole up for review before the appellate court. The time for appealing to the house of lords being regulated by rule merely, and not by any positive statutory provision, it was also competent for that court to dispense with its own rule, and to go back and open any interlocutory proceedings in the case as justice might require, although such proceedings were not in terms embraced in the appeal from

the final decree. In this state, however, the time for appealing, both from interlocutory and final decrees, is limited by the legislative power, which no court is at liberty to disregard. The statute, in express terms, declares that all appeals other than appeals from final decrees, shall be made within fifteen days. (2 *R. S.* 605, § 78, 79.) As this statute prevents a party from appealing, in terms, from an interlocutory decree after the fifteen days, it would be a mere evasion of the statute to permit him to do indirectly what he is not allowed to do directly ; that is, to appeal in fact from an interlocutory decree which settles the merits of the cause, under pretence of appealing from the final decree which, in itself, is not errroneous as to any matter which was before the court for decision when such final decree was made. In relation to the decision in the case of *Jaques* v. *The Methodist Church*, it is also proper to observe it was seriously questioned in a subsequent case in the same court, by Mr. Justice Sutherland, although he finally placed his decision in the case then before the court upon another ground. (*Kane* v. *Whittick*, 8 *Wend. Rep.* 233.) As I have no doubt as to the correctness of the vice chancellor's decision upon the merits of the case at the time he made the interlocutory decree, so that the final decree was correct even if it was competent for the court at that time to reverse the decision which had previously been made and acquiesced in, I shall leave the construction of the statutory provisions limiting the right of appeal to be finally settled by the court of dernier resort, should that court differ with me upon the merits of this case.

I think there cannot be a doubt, that the object of Fink, in executing the deed to Townsend, was to delay and hinder some of his creditors from enforcing a sale of his property and to keep possession thereof for a longer time than the fifteen months allowed for redemption from such a sale. The story as to the verbal agreement to pay nearly $7000 more than was mentioned in the writings upon the conveyance of the farm, provided the payments were not made on the precise days specified, although not impossible is highly improbable. Even if this story is true, the parties improp-

erly inserted a larger sum in the deed of trust than was actually due to Townsend at the date thereof; as the interest should have been deducted on the payments secured by the mortgage which were not on interest, and which would not become due for some two or three years thereafter. Again; the suffering the grantor to retain the possession of the farm three or four years was presumptive evidence of fraud; and no good reason is shown to prevent its being considered as conclusive evidence of fraud. The execution of nominal leases to the son, at a rent of two or three per cent upon the actual value of the property, the payment of which rent was never enforced, and when the father continued in possession as the ostensible owner and manager of the property, was too shallow a device to deceive any one as to the real intent of the parties. And the attempt to cover up the transaction by the execution of these secret leases to the son, and without enforcing payment even of the small rent reserved thereon, is of itself a strong evidence that Townsend the grantee was an intentional participator in the fraudulent designs of Philip Fink to delay his creditors. On the whole, there are too many circumstances of fraud and suspicion in this case, to induce me for a moment to suppose that the deed of Fink can be sustained as an honest assignment for the sole benefit of his creditors. The vice chancellor was therefore right in deciding as he did, that the judgments were liens upon the farm, and ought to be paid out of the fund provided for that purpose by the agreement of the parties.

The decree of the vice chancellor must therefore be affirmed with costs, to be paid by the appellants.