# COURT OF ERRORS AND APPEALS.

Between HENRY S. TERHUNE, appellant, and ASA T. COL-
TON and MARGARET his wife, WILLIAM C. SCHENCK, and
ABRAHAM W. BROWN, respondents.

A decree and execution regularly obtained will not be set aside, unless upon
satisfactory proof, not merely of vague understandings and of reasonable in-
ferences, but of facts and circumstances which make it clearly inequitable
and unjust that they should be enforced.

When a final decree involves the merits of the case which had previously been
settled by an interlocutory order, an appeal from the final decree, properly
taken, brings the whole case before the court.—Per ELMER, J.

Where a debtor, owing several debts, makes a payment to a creditor, he has a
right to apply it to which debt he pleases; if he makes no specific appro-
priation, the creditor may apply it as he pleases; and where neither party
appropriates it, the law will apply it according to its own notion of the in-
trinsic justice of the case; but all the cases in which the courts have made
the appropriation seem to be those in which neither party has appropriated
it before a controversy arose.

This cause was first argued before the Chancellor upon
the pleadings and proofs. The opinion of the Chancel-
lor upon the merits of the case will be found reported in
2 *Stockton's Ch. Rep.* 21.

Upon the coming in of the master's report, Terhune,
who was the complainant below, filed exceptions to the
master's report, which were overruled by the Chancellor,
and a final decree rendered, from which the complainant
appealed. The opinion of the Chancellor, containing his
reasons for his final decree, will be found reported *ante*
232.

Terhune *v.* Colton.

The appeal was argued by

*R. S. Field* and *W. L. Dayton*, for appellants.

*C. Parker* and *A. O. Zabriskie*, for respondents.

The opinion of the court was delivered by

ELMER, J.   The appellant, who was the complainant in the Court of Chancery, seeks to get rid of a decree of that court, made February 11th, 1837, in a cause therein pending, wherein Caleb Johnson and Enoch Johnson were complainants, and John C. Schenck, Colton and wife, and others, were defendants, and of the execution issued thereon, whereby the late sheriff of the county of Middle-sex was commanded to make sale of certain premises, now owned by the said appellant, to satisfy—first to Colton and wife the sum of $1724.38, and to William Schenck the like sum, being the amount due upon their legacies secured upon the premises, and to the complainants therein and others several other large sums of money.   The Chancellor has declared, by his decree in the case now before us, that there remained due upon the aforesaid decree and execution—to Asa S. Colton and Margaret his wife the sum of $2614.94, and to Eliza Ann Schenck, the executrix of William Schenck, the sum of $3569.41, with interest, and that the said sheriff be at liberty to proceed and raise sufficient money to pay the same, unless the present appellant shall pay the same. We are now to decide whether this last mentioned decree is in any particular erroneous.

It is, in my opinion, immaterial now to inquire what considerations induced the parties to agree, as it appears they did, that the first decree should be made as it was, or whether Colton and his wife and William Schenck were bound by that agreement or not.   The Court of Chancery had full power to make the decree as it exists. It has never been appealed from, or in any way impeached, nor does it appear to have been fraudulent or

unjust. It was insisted, for the appellant, that before the decree was made, John C. Schenck had assigned all his property to Isaac Story, and that the property in his hands could not thus be bound. But Story was a party, and although made such as the executor of James Stoddard, deceased, he was a party also in reference to his interest as an assignee. The assignment was not made until after the bill had been filed. And besides, no allegation is made, in the appellant's bill, that the decree was not binding on this account. The ground relied on is, that it was settled and discharged. Nor is it important to inquire whether the legacies ordered to be first paid were or were not liens on the property. The decree makes them liens, whatever may have been before the fact; and certainly persons who were not parties to it, and who, at the time it was made, had no interest in the property affected, cannot now call in question its propriety. The execution must be enforced, unless some proceedings of the respondents, or of others having power to bind them, have given the appellant an equity to have his property discharged. The respondents are not seeking to enforce it in any manner inconsistent with the agreement referred to, but in conformity therewith.

The complainants and others interested, in and for whose benefit the execution in the hands of the late sheriff of Middlesex was issued, have been fully paid; but Colton and wife and William Schenck have not been paid, nor has the execution, as to them, been legally discharged or satisfied. But it was earnestly insisted, on behalf of the appellant, that such an arrangement was made respecting it as deprives them of the right to enforce it; and that Bishop, who assigned his mortgage to the appellant, upon which he obtained a decree and sale of the premises, and became the purchaser, was induced to advance his money, and to take that mortgage, by means of assurances made by their authority, or for which they are responsible, that the property was free from encumbrance.

There being every appearance that this case is one of great hardship to the appellant, who appears to have purchased the mortgage and the mortgaged property in ignorance of the original decree and execution and of the subsequent transactions, I have carefully examined the evidence to see whether it establishes the allegation, that an arrangement was made, which was intended at the time, or can have the effect to prevent the execution, so far as it remains unsatisfied, from being collected. That there may have been a confident expectation that the money due to Colton and wife and to William Schenck would be paid, either by means of the claims presented to the assignee of John C. Schenck or by himself, is altogether probable. Such an expectation accounts for the impression resting in the minds of the counsel then concerned, and to which they have testified that it was settled; and considering what large sums were then expected to be obtained from the assignee, it was not unreasonable. But it is plain no arrangement was made to discharge the execution. On the contrary, an entry was made in the sheriff's docket to stay further proceedings, as respected Colton and William Schenck, until further orders; an entry which of itself, in the absence of any receipt or writing of a contrary character, is sufficient to show that the intention was to leave the execution in full force, liable to be proceeded on if the sheriff should be so ordered.

Does it appear that representations were made to Bishop that the decree and execution were no longer to bind the property? His original mortgage from Gulick was made at the same time that the moneys due to Johnson and others were paid, and he had every opportunity of knowing precisely what was done. No one is shown to have made any false statements to him. Nobody told him in explicit terms that, so far as regarded Colton and William Schenck, the execution was not to be left to stand precisely as it did. He may have believed, and I

have no doubt did believe, that they would be subsequently satisfied; but no engagement to do this was made by any one, much less is it shown that such an engagement was made a condition of his taking his mortgage. Afterwards, and a year and nine months after the entry had been made in the sheriff's docket to stay proceedings until further orders, he gave up Gulick's bond and mortgage, and took the bond and mortgage of John C. Schenck, which he assigned to the appellant. There being no allegation or pretence of concealment or misrepresentation by any one concerned, if he neglected to acquaint himself with the real state of the facts, he is chargeable with gross neglect, and his assignee stands in his shoes. They are both chargeable with notice that the decree and execution existed. It is urged that it is incredible that Bishop would have advanced his money upon the security he took, unless he had been assured there was no prior encumbrance. But it will not do to set aside a regular decree and execution by means of a mere inference. Before this can be done, there must be satisfactory proof, not merely of vague understandings and of reasonable inferences, but of facts and circumstances which make it clearly inequitable and unjust that they shall be enforced.

If we look at the evidence on this subject, what does it amount to? Mr. Field testifies that he considered the decree settled, that such was his understanding at the time, and he is satisfied it was the understanding of all the parties that the execution was to be considered settled, so that the property might be freed from encumbrances, in order to raise money by new mortgages. He also states that John C. Schenck always afterwards spoke of the decree as settled, and that he himself, as president and attorney of the Princeton Bank, afterwards took an assignment of a mortgage upon the same property, under the impression that it was free from the encumbrance of the legacies. Mr. Green testifies that he understood it was part of the arrangement that the decree was to be con-

sidered as satisfied, so that money might be raised on the property. And Mr. Gulick swears that he understood and believed the execution was settled. All these statements amount only to vague recollections of what the witnesses now believe they supposed to be the effect of certain transactions which had taken place thirteen years before they were sworn. The question now is, what they did, not what they supposed they had done, or intended to do. It must, however, be remarked, that some of these gentlemen knew perfectly well that the stay of an execution, so far from discharging it, left it in full force, and that no court would venture to consider a final decree and execution as settled or discharged without more satisfactory proof of such being the intention than vague impressions. Neither Colton or his wife or William Schenck were asked to sign any agreement or receipt, nor did Mr. Green, who acted as their solicitor and agent, sign anything but the stay of execution; and Mr. Green testifies that he has no recollection of ever having mentioned to them that it was proposed that the decree in their favor should be satisfied. What they did, is entirely consistent with their strong belief that, in some way, the legacies would be discharged, but is altogether irreconcilable with the intention at that time to discharge the property from the lien of the decree. Had they really intended to do this, the mode of effecting it was plain and easy; and there being no proof or allegation that they were, by any accident or other cause, prevented from doing all they intended to do, we cannot but conclude that what they did was just what they designed to do.

After the arrangement made in 1837, Mr. Schenck paid, or gave his notes to pay, Colton and wife the interest on the legacy secured by the decree, and also on the Slayback legacy, amounting together to $5000, and made sundry payments on account of William Schenck's claim up to the time of his death, in 1843. In the year 1848, the late sheriff of Middlesex was directed to proceed and sell

2 D*

the appellant's property upon the execution in his hands, and thereupon the appellant filed his bill. The delay was not so unreasonable as to be of itself any ground of relief; nor does this circumstance throw any suspicion on the justice of the respondents' claims to be paid what remains due on their legacies.

Being thus of the opinion that the interlocutory decree of the Chancellor was correct, it is not necessary to decide the question, raised by the respondents' counsel, whether we are not precluded from examining that question by the omission to appeal from that decree within forty days, and no definite opinion is meant to be given on that point. I am, however, myself inclined to think that when the final decree involves the merits of the case, which had previously been settled by an interlocutory order, an appeal from the final decree, properly taken, brings the whole case before this court. In the case of *Newark Plank Road Co.* v. *Elmer, attorney general,* 1 *Stock.* 786, this court dismissed the appeals from the interlocutory decrees, but decided the whole merits on the appeal from the final decree; and in many cases it would be very difficult to separate the questions which arose at different stages of the case. The rule in England appears to be to treat the whole case as before the court on an appeal from the final decree. And see *Teaff* v. *Hewitt,* 1 *Ohio St. R. N. S.* 511. Chancellor Walworth held a different rule in the cases of *Bank of Orange* v. *Fink,* 7 *Paige* 87, and of *Copus* v. *Kauffman,* 8 *Paige* 585. The New York statute differs somewhat from ours. The true construction of the statute of this state (*Nix. Dig.* 98, § 80,) would seem to be, that if the party thinks proper to appeal from an interlocutory decree, it must be done within forty days; but that where the final decree involves the point decided by the interlocutory decree, an appeal from the final decree may question the correctness of the interlocutory order upon which it is founded. This construction is much strengthened by the saving in favor of in-

fants, *feme coverts*, and insane persons, who have three years after the disability is removed within which to appeal from a final decree, from which they would derive no benefit, if they are bound to appeal within forty days from an interlocutory decree, or lose the right of questioning it, when it happens to decide the merits settled by the final decree.

Was the final decree, so far as it overruled the exceptions taken to the master's report, correct? The first exception was, that two sums, one of $607.43, and the other of $904.82, ought to have been credited as paid in discharge of the legacy due to William Schenck, which was a lien on the appellant's land. The first of these sums is the balance of a book account accruing to John C. Schenck, partly for board and partly for cash, from the time of the original decree to March, 1839, which items of indebtedness were not specifically appropriated by either of the parties until the last date when the parties settled the account, and it was endorsed as a credit on a bond of said John C. Schenck, held by the said William Schenck, secured by a mortgage on other property. The other sum was for a similar book account, accruing subsequently, down to March, 1846, which, in March, 1849, after the death of John C. Schenck, was credited, by order of William Schenck, in part payment of an execution out of the Court of Chancery for the sale of mortgaged property, to make the balance of the same debt upon which the first named sum was credited.

It was not disputed but that the appellant stood in the place of Bishop precisely as if he still held the original mortgage given to him by John C. Schenck; nor was it insisted that John C. Schenck was not at liberty, when the payments were made, to make them on either of the debts at his pleasure; but it was urged, for the appellant, that as neither of the parties actually appropriated them specifically to either debt at the time, they could not afterwards do it, but that it remains for the court now to do it,

according to its own view of the equity of the case. This is the ground assumed by the Chancellor, but in my opinion incorrectly. If the fact, that the appellant had a subsequent interest in the property bound by the decree did not give him an equity to insist that payments actually made afterwards must of necessity be applied to that debt, whether the parties so intended at the time or not, I cannot see that he had any equity to interfere with any subsequent appropriation made by either of the parties, provided he was no otherwise prejudiced than he would have been had it been made at the actual time of payment. The well established rule is, that with some exceptions not affecting this case, where a debtor owing several debts makes a payment to a creditor, he has a right to apply it to what debt he pleases; if he make no specific appropriation, the creditor may apply it as he pleases; and where neither party appropriates it, the law will apply it according to its own notion of the intrinsic justice of the case. All the cases in which the court has made the application, so far as I am aware, are cases where neither party had appropriated it before a controversy arose. The opinion has been expressed, that the creditor must do it soon, or in a reasonable time; but no case limits the right of either party to the precise time when the money was received. In the case of *Simson* v. *Ingham*, 2 *Barn. & Cress.* 65, where sureties were bound for one of the debts due to bankers, and money was paid to them, which at the time they entered in their books, so that if those entries had governed, the money would have been held to be a payment on the debt for which the sureties were bound, that being the oldest account, it was held that the entries not having been communicated to the debtor, the creditors might subsequently make up their accounts so as to appropriate the payments differently. In 2 *Greenl. Ev.* § 532, it is said the weight of authority is in favor of the creditor's right to make the election at any time he pleases. Of course the applica-

tion must be to a debt which existed at the time of payment, and before the circumstances of the parties interested are in any way changed; but with this limitation, it is, in my opinion, important that the creditor's right should be maintained. The first mentioned sum was credited by the mutual agreement of the parties, and as it is undeniable, they had a right to do, as between themselves. If their delay in doing this had in any way prejudiced Bishop, who at the time held Gulick's mortgage, the appellant might, no doubt, complain of it; but as it did not, I am aware of no equity he has to interfere. No communication was made to Bishop of the state of the accounts between John C. Schenck and William Schenck; nor does it appear that the latter had any knowledge of Bishop's mortgage. The mortgage from John C. Schenck to Bishop was in fact given after this credit had been made. As to the other sum, it was made up of accounts and payments accruing after the first credit had been made, so that I think it is the fair inference that the parties intended at the time that they should be credited to the same debt, as they eventually were. I am therefore of opinion, without reference to the reasons relied on by the Chancellor, that he was right in overruling this exception.

The second exception was, that the master had not deducted from the amount stated to be due Asa Colton and wife two sums of money received by John C. Schenck, as the trustee of Mrs. Colton, from his assignee. It appears that the trustee made a claim for both the debts due to Mrs. Colton, that is to say, the one now in question, and the other debt before referred to, arising out of what is called the Slayback legacy. This whole claim might with propriety have been rejected by the Court of Common Pleas; but no exception having been made to it, Schenck received two dividends, amounting together to the sum of $1172.03. The claim was sworn to by Mr. Schenck, as trustee, and by Mr. and Mrs. Colton, August

16th, 1836.  In July, 1837, and before any dividend was received, a sale of John C. Schenck's property, mortgaged for the debt due to Mrs. Colton, the Slayback legacy, was made by the sheriff, at which one Packer purchased on behalf of Mrs. Colton, and her attorney receipted to the sheriff for the money due to her.  It would seem, how- ever, that in fact she never received anything, the pro- perty having been conveyed by Packer to Schenck, and afterwards mortgaged to secure the other debts.  But be this as it may, I think the Chancellor was right in refus- ing to direct any more of those dividends to be credited than what properly belonged to that portion of the claim which arose from the legacy secured by the decree. Whatever else was received was a payment on the other debt, if in fact it remained due; or if that debt is to be considered as otherwise paid, it did not rightfully belong to Mrs. Colton, and cannot be considered as received by her trustee for her use.  It belonged to the other credit- ors of John C. Schenck.

The other exceptions were not insisted on.  The decree must be in all things affirmed, but without costs.

The decree was affirmed by the following vote:

*For affirmance*—The CHIEF JUSTICE, Judges OGDEN, VREDENBURGH, HAINES, RYERSON, ELMER, CORNELISON, VALENTINE, SWAIN, WOOD.

*For reversal*—None.