Nelson, J.,
delivered the opinion of the Court.
Complainants, Nathan J. C. and Robert E. Allen,, are the children of the defendant, Susan E. McCullough, by her first husband, Robert C. Allen, who died’ intestate in March, 1842. After his death, she intermarried with William P. Harris; and complainant, Martha Ann, is the only issue of the second marriage. William P. Harris died, intestate, in the year 1849, and the defendant, Susan, intermarried with her co-deféndant, James McCullough, in the month of October, 1855. Á separation occurred in the month of December, 1860; and McCullough, in the year 1864, filed a bill for divorce, against his wife, in the Circuit Court of Wilson, which was dismissed by said Court on the 23rd. of September, 1865; and, at the same time, a decree was pronounced in her favor, on her answer and cross bilí, and a divorce was granted, on the ground of the adultery of her husband. During the marriage, and on 19th April, 1860, this bill was filed for the purposes of having the right of complainants declared to the tract of 260 acres of land mentioned in the pleadings; of causing their interest in certain slaves to be ascertained and determined, and of compelling an account as to the guardianship of complainants.
It seems that the defendant, Susan E,, was qualified as their guardian, at the January Term, 1&52, of the County Court of Wilson County, and continued to act as such until 1860, when the oomplainant, Nathan, having attained his majority, was duly qualified as guardian of *178 complainants, Richard F,, and Martha Ann. Complainants, Nathan and Richard F., claim that their father, Robert C. Allen, was the owner of a tract of land of seventy-five acres, which descended to them as his sole heirs at law; that the rents.and profits thereof were received by their mother, Susan F., before her inter-marriage with the said James McCullough, and by her and her husband afterwards. They further claim an interest in certain slaves, under a deed of gift from their grand-father, bearing date 8th April, 1842; and all the complainants claim an interest in his estate under the will of their said grandfather, John Jarratt, bearing date 12th September, 1848.
McCullough and wife having filed separate answers, the case was regularly heard in the Chancery Court at Lebanon,.and on 11th April, 1861, a decree was regularly pronounced, in which various facts were stated as appearing to the satisfaction of the Chancellor, and by which the Master was directed to take and state an account, and to charge the defendants with two-thirds of the rents and profits of the tract of land known in the pleadings as the Bend tract, and two-thirds of the reasonable hire annually of the slaves, and their increase, conveyed by said deed of gift of 8th April, 1842, beginning with the years that defendant, Susan F., obtained possession of said land and slaves, “and to the first of last year as to the land.” Minute directions were given in said decree as to the mode of taking and stating the account, and the parties were authorized to take additional proof, and to examine each other on interrogatories touching the matters of reference, and the Master was directed to make his report to the next term. So much of the complainant's bill as seeks *179 to pursue their trust fund into the home tract of land, was dismissed, and the costs were equally divided between complainants, and defendant, James ■ McCullough. Complainants prayed an appeal as to so much of the decree as dismissed their bill in regard to the home tract, and taxed them with one-half of the costs, but the Chancellor declined to grant the appeal before the coming in of the Master’s report. The settlements made by defendant, Susan E., as guardian, were set aside by said report, and, at the instance of her husband, she was directed to file with the Master all her books of account and vouchers as guardian.
The case appears to have slumbered during the war, and until 10th October, 1865, when the death of Richard F. Allen, one of the complainants, was declared by an interlocutory order; and it appearing that the account had not been taken, said order proceeds as follows: “On motion, with the consent of the solicitors of the parties, it is ordered that the decree of reference heretofore pronounced in the case be revived, and the Clerk and Master be required to take and report to the next term the account therein ordered; and that this cause stand and be revived in the name of such person or persons, as may be qualified as administrator on the estate of said Richard F., from and. after the filing of letters of administration in the office of said Clerk and Master; but no steps, in taking the account, shall be taken until the filing of said letters.” It is stated, in the record, that F. A. Chandler filed his letters as administrator of Richard F. Allen, deceased, on 6th November, 1865, and the Master proceeded to hear proof and filed his report, 2d April, 1866. Ex *180 ceptions were filed 13tb April, 1866, in behalf of McCullough, the seventh and last of which is as follows, viz: “He also excepts upon the ground that James McCullough is not responsible for anything from 1842 to October, 1855, for the reason that he and his wife, Susan, were divorced in 1865, before the account was taken, and he is not responsible for any amount, save where he received assets; and he is not responsible, since 1855, for the devastavits of Susan McCullough, which he did not participate in, now having no assets of his former wife, and having paid out more than he received.”
Apparently distrustful as to the propriety of presenting such new and important matter in the form of an exception to the Master7» report, the defendant, James McCullough, made application to the Chancellor for leave to file a bill of review, and on 14th April,. 1866, an interlocutory decree was made, in which it is stated that the conditions necessary for filing such a bill having been complied with, and the Court being of opinion that it was a proper case for filing such bill, leave was granted, and the complainants waived the issuance of a copy and subpoena, but without waiving any right of defense by plea, answer or otherwise. The complainants also excepted to tbe action of the Court in granting leave to file said bill. The bill of review was filed, however, on the -same day, and among other things it is alleged that the complainants are seeking to hold the said James McCullough liable for the sum of $8,500, with interest from 1st April, 1866, reported by the Master; that he married the defendant, Susan, in October, 1855, and they lived together until March, 1860, when they parted; that she was divorced from him *181 23rd September, 1865, by a decree of the Wilson Circuit Court, a copy of which he exhibits; that it is shown by the report that $3,137 of the amount reported had passed into said Susan’s hands before the marriage, making, with compound interest, about $6,000 of the amount reported; that the said James ought not to be held to account for any part of the liability which accrued during the marriage, unless he participated therein or received the assets; that he did not then have any of the property of said Susan, except one or two articles of furniture not worth more than thirty dollars, and could not be made liable for the value of her property, or any pecuniary liability incurred by her, to a greater amount than he had actually received; that the divorce was a civil death, and having, occurred since the first decree ordering an account, he could not sooner avail himself of it as a defense. Answers were filed to the bill of review by Mrs. Allen, formerly McCullough, and the other parties; and, for the purpose of expediting the cause, it was ordered, 19th October, 1866, that all the matters of account embraced in the cross bill and bill of review, were referred to the Master to hear proof and report, but saving to both parties “all defenses existing before the date of said agreement.” This order of reference was set aside by consent, 10th December, 1866, and the Chancellor, after hearing argument of counsel on defendant’s motion for specific instructions to the Master touching the matters alleged in “the cross bill or bill of review,” directed that the Master should, in taking the account, charge the defendant, McCullough, with all the hire of the slaves and the rent of the Bend tract of land received by himself or defendant, Susan E., during the *182 existence of the coverture between them, giving to the complainants the proportions of the hire and rent to which they are entitled under the said decree of April, 1861, and crediting him with all legal disbursements made by him or the said Susan F., during the coverture.
The Master made his report 16th December, 1866, to which exceptions were filed by defendant, James McCullough, which were disallowed on the final hearing 17th December, 1866, and a decree rendered in favor of complainants against Susan F. Harris, for $8,506.46, with interest from 1st April, 1866, the same being adjudged to complainants in different proportions; and to be credited with whatever amount they might collect from James McCullough, against whom a decree was rendered for the aggregate amount of $3,464.40, to be paid to complainants in unequal proportions. If not paid before the February Hules, the Master was directed to sell the property attached in the mode specified in said decree. From this decree, an appeal was granted to the complainants, and to the defendant, James McCullough.
Various questions have been presented here in the determination of which we have been greatly aided by the faithful and laborious researches and able arguments of the counsel on both sides.
1. What was the effect, under the circumstances of the case, of the divorce granted after the suit had been pending for several years, and especialty after the decree of April, 1861?
It is a familiar principle, that the husband, by marriage, acquires an absolute title to all the personal property of the wife, not being her separate estate created by *183 deed, will, or oilier lawful mode of creating such estate, wbicb she had in possession, or in action, at the time of the marriage, ahd which he reduces into his possession during the marriage; and after her death, he may, if he survives her, become her administrator, and recover her choses in action, or other personal property not reduced into possession during the coverture: See Reeve's Dora. Reí., 1; Ch. PI., 31; Browne on Actions, 43 Law. Lib., 237, m.
As a consequence of this principle, the husband be'comes liable to the creditors of the wife for all debts due or owing by her at the time of the marriage, and this whether he acquires any property in fact by the marriage or not; but it is generally said that this liability continues no longer than the coverture, and is wholly independent of any question growing out of the amount of property received or not received in virtue of his marital rights: Reeve's Dom. Rel., 3rd ed., 53, 54; Adair v. Shaw, 1 Sch. and Lef., 263; Jones v. Walkup, 5 Sneed, 138, 139; Browne on Act., 43 Law. Lib., 245, m.
Pounding their argument upon the principle last stated, it is strenuously maintained by the counsel of James McCullough, that the divorce obtained by his wife operated as a civil death; that no decree finally and definitely ascertaining the amount of his liability for the acts of the wife before and during the marriage, was pronounced anterior to the divorce; that the effect of the appeal in this case was to vacate and annul all the decrees pronounced in the Chancery Court, and that this Court has no more power to pronounce a decree against the husband, for the ■wife's liability, than it would have possessed in the event of her natural death. In aid of *184 this position, several authorities have been cited; but the doctrine to be deduced from them is, summarily and correctly, stated in Shelford on Mar. and Div., 31 Law Library, 639, m., as follows: “The husband is liable to the debts of the wife contracted by her- before the coverture, and the husband and wife may be jointly sued for such debts during coverture. But if these debts are not recovered against the husband and wife in her 'lifetime, the husband cannot be charged for them, either at law or in equity, after the death of the wife. The husband, during the coverture, is liable for all his wife’s debts, though he had nothing with her; and, on the other hand, though he had a considerable personal estate with her, yet, unless he be sued during the coverture, he is not- afterwards liable, even in equity. But if the wife survive the husband, an action may be maintained against her for the recovery of such debts.”
While such is the general doctrine as to rights which may be affected by the natural death of the wife, but little aid can be derived from the English authorities as to the effect to be given here to a divorce from the bonds of matrimony. There it would seem that the power to grant a divorce a vinculo rested only in Parliament, as it was exercised by our State Legislature prior to the Constitution of 1834. The divorce a vinculo matrimonii was unknown to the Ecclesiastical Courts, which had only the power to declare the nullity of the marriage for causes existing at the time when the marriage took place; and could not, even for adultery, -grant any other than a divorce or separation a mensa et thoro. See Shelf, on Mar. and Div., 31 Law Lib., 364, 365, rnarg. But, by the *185 Constitution of 3834, Article XI, section 4, the .Legislature was prohibited from granting divorces, but empowT-ered to authorize the courts of justice, by general and uniform laws, to grant them for such causes as might be specified by law. This was followed by the act of 1835, c. 26, and by other' statutes passed subsequently, and carried into the Code, 2448, 2478. Without here transcribing section 2448, which specifies nine causes of divorce from the bonds of matrimony, it will be seen that three of them, at least, are causes existing at the date of the marriage, and which would avoid the contract for fraud; while the remaining six causes are such as arise after the marriage is celebrated. Erom the very nature of the causes, the effect of the decree dissolving the bonds of matrimony might be different in the two classes of cases — declaring, in the one, that the marriage never had a legal existence; and, in the other, that although lawful in its origin, the contract is abrogated for causes subsequently occurring. In the one, it might be properly declared that no rights of property were acquired by either party; in the other, that rights which had been acquired and acted upon would not be disturbed.
When the divorce is granted for causes which arose during the marriage, it does not follow that the same legal consequences would result as in case of the death of either party; for, although the bonds of matrimony are dissolved, and either party is at liberty to marry again, there are rights of property connected with or growing out of the marriage relation, which, under the provisions of the Code, continue after the dissolution of the marriage, and are dependent upon which of the parties may *186 be the successful actor in procuring the divorce. Under section 2471, and the four previous sections, if the wife be the successful party, the most liberal provisions may be made by the Court pronouncing the decree, for alimony and the support of the wife, by vesting in her the title to part of the husband’s property; but it is expressly declared that “if the wife, at the time of a decree dissolving the marriage, be the owner of any lands, or have in her possession, goods, or chattels, or choses in action, acquired by her own industry, or given to her by devise or otherwise, or which may have come to her, or to which she may be entitled by the decease of any relative intestate, she shall have entire and exclusive dominion ánd control thereof, and may sue for and recover the same in her own name, subject, however, to the rights of creditors who became such before the decree was pronounced.” And, on the other hand, it is provided, by section 2472, that: “When a marriage is dissolved at the suit of the husband, and the defendant is owner, in her own right, of lands, his right to and interest therein, and to the rents and profits of the same, shall not be taken away or. impaired by the • dissolution, but the same shall remain to him as though the marriage had continued; and he shall also be entitled to her personal estate in possession or in action, and may sue for and recover the same in his own name.” Other important provisions are contained in sections 2473 to 2477, relating to the person by -whom and the causes for which the divorce may be obtained, and the rights of property, &c.; but the sections quoted clearly show that, by the laws of this State, the consequences of a divorce a vinculo are *187 not the same as those resulting from the death of either party.
In the event of the wife’s death, the husband can only become owner of her personal property and choses in action not reduced into possession during'the coverture by administering on her estate; and is then only liable to the wife’s creditors before marriage to the extent' of the value of the property administered upon, and this without any reference to the quantity or value of the property reduced into his possession during the marriage. But the necessary implication resulting from, and the proper construction of, the language employed in section 2471' — • “subject, however, to the rights of or editors who became such before the decree was pronounced” — is, that the creditors of the husband, or of the husband and wife, who maintained that relation at any time during the marriage, are not to be precluded from collecting their debts out of the husband, or out of the wife’s property to which his marital rights had attached, by reason of the divorce a vin-culo. Nor was it the intention to preclude the creditors of the wife, who were such before the marriage, from collecting their debts out of her property secured to her by section 2471. The character of the property specified justifies the-interpretation which includes the creditors of both or either. If, at the time of the divorce, she was the owner of any lands, the husband, notwithstanding the divorce, would be tenant by the courtesy or during the life of the wife, according to circumstances. If she has in her possession goods, or chattels, or choses in action, acquired by her own industry, the husband would be en *188 titled to these by virtue of bis marital right; and as credit may have been extended to the wife on the faith of the wife’s ownership, before the marriage, or to the husband on the faith of his ownership, afterwards, the intention was to save the rights of the creditors of either, and to hold the property liable to the satisfaction of their demands. And it is implied in this section, that, although a decree dissolving a marriage may be pronounced, the husband’s marital right to reduce into his possession any personal property given to or inherited by her, having attached during the marriage,' would continue after its dissolution; and therefore, if there are no creditors, his right to do so is restricted and destroyed by the saving in favor of the wife, (creditors out of the way,) to sue for and recover the same in her own name, and to have entire and exclusive dominion and control thereof.
The provision in section 2473, that “if the bonds of matrimony be dissolved at the suit of the husband, the defendant shall not be entitled to dower in the complainant’s real estate, nor to any part of his personal estate, in case of his intestacy, nor to alimony,” when taken in connection with the provision in section 2398, that “if any person die intestate, leaving a widow, she shall be entitled to dower in one-third part of all the lands of which her husband died seized and possessed, or of which he was equitable owner,” clearly conveys the idea that, in the view of the Legislature, a divorced wife might be regarded as a widow, and would be entitled to dower and distribution; and the obvious intention was to punish *189 her as the faulty or guilty party, by excluding her from asserting such claims where the marriage is dissolved at the husband’s instance.
In the case of Ames v. Norman, 4 Sneed, 683, where a conveyance was made in fee, during the marriage, to husband and wife jointly, and the land was sold at the instance of an execution creditor of the husband, and a bill was filed by the wife for divorce, this Court held that the unity of seizin in respect to the joint estate was severed and, destroyed by the divorce; that the parties held by moieties; that the purchaser “became invested with the right of the husband as it existed at the time of the sale, that is, a right to occupy and to enjoy the profits of the land as owner during the joint lives of the husband and wife, subject to the contingency that if the complainant survived her former husband, his estate would then terminate; but if the husband survived, he would become absolute owner of the whole estate.” In that case, it was observed by McKinney, J., that “the decree in this case would seem to take it for granted that, upon a dissolution of the marriage by a divorce at the suit of the wife, the same legal consequences follow, in all respects, as if the marriage had been dissolved by the death of the husband. This is a very erroneous assumption, so far, at least, as relates to the question under consideration.” Ibid, 694. And, in the case of Gillespie v. Worford, 2 Cold., 632, it was held, that where the husband had conveyed the wife’s land in fee, for himself, and as attorney in fact for the wife, although the power of attorney executed by the wife was void and inoperative to convey her interest in the land, yet the deed, notwith *190 standing a subsequent divorce at the wife’s instance, was operative to pass the husband’s title as tenant by the courtesy, and “vested the purchasers with an estate of freehold in the one-third undivided interest in the lands therein 'described, determinable on the death of the tenant by the courtesy.” Ibid, 644.
We hold, therefore, that the same legal consequences did not result from the divorce obtained by the wife in the case before us, that would have resulted from her 'natural death.
2. In accordance with the opinions delivered in three cases recently determined by this Court at Knoxville,[1] we hold that the decree in this case, pronounced 11th April, 1861, was final in such a sense as that an appeal might then have been granted, by the Chancellor, as a matter of favor, though not as a matter of right. By that decree, the liability of James McCullough, as husband, was definitely fixed and ascertained, and nothing remained to be done except to ascertain its amount by the reference to the Master. Although all further action seems to have been suspended until 10th October, 1865, the decree was then revived by consent, and the Master was required to take and report to the next term the account therein ordered. It appears that the divorce had been granted by a decree pronounced 23d September, 1865, and it can not be doubted that James McCullough had full knowledge of this fact when he consented, through his counsel, to the revivor of the decree of 11th April, 1861. There is no allegation of surprise as to the decree of 10th Oc *191 tober, 1865, in his bill of review, filed 14th April, 1866, in which relief seems to be sought chiefiy upon two grounds: first, that he had discharged debts of the wife to a much larger amount than any property or' effects of her’s received by him during'the marriage; and secondly, that “this matter has occurred since the procuring the divorce in this cause, and the ordering of the account, and the same could not have been used by him in his defense against said decree.” It does not appear in proof that the defendant had “paid out two thousand dollars more than means or assets came to him from her,” and that this matter had occurred after the divorce was procured in the short interval between 23rd September, 1865, and 14th April, 1866, and this allegation in the bill of review is entirely unsupported. If it had been established by evidence, it could not have affected the result, as the liability of the husband for the wife’s debts does not depend upon the amount of her property received, but upon the legal results of the marriage relation.
While the death of the wife, pending an action at law against husband and wife, upon the contract- of the latter before marriage, would, perhaps, abate the suit as to the husband, it cannot be insisted that if the claim had been ripened into a judgment, her subsequent death would absolve the husband from liability. If, after the husband’s death, the wife, being under a moral obligation to pay a debt contracted by her during the marriage, but for which she could not have been sued, promises to pay, the moral obligation is a sufficient consideration to support the promise, and the action can be maintained; and, by a parity of reasoning, if the hus *192 band, after the wife’s death, assume,. in consideration of the marriage or of property received by her, to pay a debt contracted by her before marriage, an action can be successfully prosecuted upon such promise. Consequently, we hold, in the case under consideration, that, as the liability of McCullough was ascertained by a decree pronounced during the marriage, and as he consented to a renewal of the. decree after the divorce, he could not change this liability by filing a bill of review, or by appeal. Having consented to the decree reviving the order to account, he cannot, by his appeal, retract that consent. He is estopped by his own admission of record, made through his counsel, whose authority he does not question in his bill of review; and the only effect of the appeal is to enable this Court to consider the account, and to ascertain and determine whether it was correctly taken, upon the principles ascertained and declared in the order of reference. See Webb v. Webb, 3 Swanston, 658; Atkerson v. Marks, 1 Cow., 709; Kane v. Whitlick, 8 Wend., 219. See, also, Code, 3107, 2979.
3. We do not determine that McCullough, in consequence of his marriage, actually became guardian in place of his wife, who, as is admitted in the pleadings, was appointed guardian at the January Term, 1860, by the County Court of Wilson county. In England, it. has been held that where a female marries, who. has been appointed guardian by the Court, it is, of course, to make a reference to appoint a guardian, even if she be the mother of the infant; but she may be re-appointed. 3 Lead. Ca. in Eq., 234, 3rd ed. Although the Code, 2489 to 2546, contains the results of very careful legis *193 lation as to tbe duties and rights of guardian and ward, and, without abridging the powers of the Chancery Court, confers a very extensive and important jurisdiction upon the County Court, as to the appointment and removal of guardians and the settlements to be made with them, it does not contain any provision whatever as to the legal consequences resulting from the marriage of a female guardian. But as the County Court, by Code, 2493, is invested with “full power to take cognizance of all matters concerning minors and their estates/’ and may appoint a guardian wherever it appears necessary, it may be presumed that if a female guardian' marries a person who, in the judgment-of the Court, is not a proper person to act in that character, it would be competent for the Court to treat the marriage as a renunciation of the guardianship, and to appoint a new guardian in her place. This point is not now adjudicated, and is noticed, incidentally, for the purpose of declaring, as we do in this case, that if a man marries a woman who is guardian at the time, he assumes, by the marriage, her contract of guardianship, just as, by the marriage, he becomes liable, in any other case, for the contracts of the wife; and if, as was the case here, the wife, with his knowledge, continues to act in her fiduciary capacity, and to make settlements as guardian with the County Couit, or continues to act as guardian, and fails to make the annual settlements required by law, he becomes just as much bound for her acts as- if his own name were affixed to her bond as guardian. It is a well established principle of equity jurisprudence that “trusts are enforced not only against those persons who are rightfully pos *194 sessed of the trust property as trustees, but also against all persons who come into possession of the property bound by the trust, with notice of the trust; and whosoever so comes into possession is considered as bound, with respect to that special property, to the execution of the trust.” See Adair v. Shaw, 1 Sch. and Lef., 262; Peck, 443; 5 Sneed, 465.
Neither the death of the wife, nor a divorce, can exonerate the husband from her liability as guardian, both before and during 'her coverture. It is presumed that she has carried, or ought to carry, the annual accretions of the ward’s estate into each successive year; that she holds, or is bound to hold, the accumulated and accumulating funds in her hands at the commencement of each year, and that these are an hand, or subject to her control, if she still acts as guardian, .at the time of the marriage, and that if she continues to act after the marriage, it is with her husband’s assent, and is, iu law, his act; and although he is not technically a guardian, he becomes such, practically and by operation of law, so far as the estate of the ward is concerned, through the legal identity of husband and wife, and is to be regarded in equity as contracting jointly with her for its faithful management and their joint accountability. If he does not wish to maintain this attitude, and the legal control over the wife with which he is invested by law is inadequate to enable him to escape future liability, it would not be difficult for him to obtain relief from the County or Chancery Courts. He is presumed to know his own rights, and to be capable of asserting and maintaining them. The minors are presumed not to know, and to *195 be incapable of enforcing their legal interests; and it would be inequitable to permit their estate to be squandered, and to allow the husband, whose criminal misconduct occasioned the divorce, to take advantage of his own wrong, and shelter himself behind the technical defense, that the dissolution of the marriage protects him against acts which were just as much his own as the acts of his wife, in legal contemplation.
4. Holding that McCullough is precluded by “the consent decree,” as it has been styled in the arguments, from inquiring into the grounds upon which the Chancellor acted, we hold, likewise, that the complainants, although they were minors at the commencement of the suit, are bound by the consent of their guardian, given through their solicitors. Although it is usual, in cases of compromise, or where decrees are pronounced by consent, to refer it to the Master to inquire whether the decree, where infants are concerned, will be for their benefit, yet, if it clearly appears, as in this case, that the decree is beneficial to the infants, a decree may be pronounced, on the consent of the guardian and all other parties. See Macph. on Inf., 39 Law Lib., 409, 544, marg. pp.; and as to admissions in pleading, and agreements generally in the progress of causes, see Shelby v. Yancey, 1 Coop. Overt. 185, foot p; 3 Coop. Hay., 504, foot p; Jones v. Kimbro, 6 Hum., 319.
In this view, it is unnecessary to give any construction to the deed of gift from John Jarrett, bearing date the 8th of April, 1842, or to his will, bearing date 12th of September, 1848, as these instruments were construed, and the rights of the parties under them declared by *196 tbe decree of the 11th of April, 1861, and the revivor of said decree by consent on the 10th day of October, 1865. The consent mentioned in the last -named decree, that “ the decree of reference heretofore pronounced in this case be revived/’ evidently applies to the entire decree of the 11th of April, 1861, and embraces not only the proofs to be heard, and the matters of calculation to be made by the Master, but the principles upon which the account was ordered; for if the rights declared are not embraced in the expression, “the decree of reference,” it would be difficult, if not almost impossible, to comprehend the points referred, or the instructions under which the Master was directed to act.
With the modifications of the account directed in -the memorandum appended hereto, the decrees of the Chancellor are, in all other respects, affirmed. Let it be referred to the Clerk of this Court, to re-state the account, with the modifications above indicated. And because it appears that the defendant, James McCullough, has prosecuted this appeal as a pauper, let the entire costs of this cause, in this Court and the Court below, be adjudged against the complainants, and the fund decreed in their favor be liable -therefor, in addition to their personal liability,.

 Meek v. Mathis, 1 Heis., 534; Harrison v. Farnsworth, Id., 751; Abbott v. Faga, Id., 742.